[Traywick v. Keeble & Co.]

# Traywick *v.* Keeble & Co.

*Trover by Vendor, against Sub-Purchaser of Goods.*

1. *Fraudulent purchase of goods; contest between vendor and sub-purchaser.*—When the vendor of goods sold on credit to an insolvent purchaser, claiming the right to rescind the contract on the ground that the purchaser, having no intention nor reasonable expectation of paying for them, fraudulently concealed or misrepresented his condition, sues a sub-purchaser in trover for their conversion, the questions for consideration are, (1) whether the purchaser committed such a fraud as justified the vendor in claiming a rescission, and (2) whether the sub-purchaser had notice, actual or constructive, of that fraud; but it is not necessary for the vendor to show that the sub-purchaser participated in the fraud practiced on him by the original purchaser, nor is the case governed by the principles which apply when a sale of goods by an insolvent debtor to a creditor is attacked by other creditors.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by H. C. Keeble & Co., suing as partners, against T. W. Traywick, to recover damages for the alleged conversion by the defendant of a quantity of goods, which the plaintiffs, who were wholesale merchants in Selma, had sold on credit to one W. R. Yeldell, and which the defendant claimed to have bought from said Yeldell. The plaintiffs claimed the right to rescind the contract of sale, and to recover the goods, on the ground that Yeldell was insolvent at the time, and that he procured them on credit by a fraudulent concealment of his condition, having no intention or reasonable expectation of paying for them, and that the defendant bought with notice of this fraud. The defendant claimed, and his testimony tended to show, that he bought the goods from Yeldell in good faith, at the price of $249.48, paying him $61.70 in cash, the balance being an existing debt which Yeldell owed him; and that this was the reasonable value of the goods, which were invoiced at $258.89.

The defendant requested the following charges in writing, and duly excepted to the refusal of each: (1.) "If the jury believe, and are reasonably satisfied from the evidence that the defendants purchased the goods in good faith, and parted with value for them from Yeldell, and at the time he had no notice of any fraud practiced by Yeldell upon plaintiffs when he purchased the goods, then they must find for the defend-

[Traywick v. Keeble & Co.]

ant." (2.) "When a debtor, although insolvent, or in failing circumstances, makes an absolute sale of his property to a creditor, in payment of an antecedent debt, by way of preference over the other creditors, the debt being due, the price paid being full and adequate, and no interest being reserved by the grantor, the mere fraudulent intent of Yeldell does not vitiate the conveyance, because the act itself is legal, and fraud without damage gives no right of action." (3.) "Although Yeldell may have got the goods from H. C. Keeble & Co. by fraud, still, if they believe from the evidence that T. W. Traywick settled and received satisfaction in full of the claim he had; and that the amount due Traywick was $249, or near this sum; and that he received a bill of sale of said goods amounting to about $258; and that the amount was paid; and that it was not greatly disproportionate to the real value; and they are reasonably satisfied of these facts, then the defendant is entitled to a verdict in his favor, unless the plaintiffs further shows that Traywick participated in or joined in the fraud, if any there was perpetrated by Yeldell on H. C. Keeble & Co." (4.) "Suspicious circumstances, such as haste in consummating the sale at an out of the way place, selling the entire stock in trade, that Yeldell may have been avoiding the officers, etc., do not necessarily prove fraud in the sale, but may be explained away by satisfactory proof that Yeldell owed the defendant Traywick a *bona fide* debt, and that the agreed price was not greatly less than the value of the goods, it not appearing that any benefit was reserved to W. R. Yeldell, beyond what the law allows. Within these limits, the law permits a creditor to be diligent in securing his debt from a failing debtor, though nothing be left for any other creditor." (5.) "Unless the jury are reasonably satisfied from all the evidence that W. R. Yeldell, at the time of the sale of the goods by him to T. W. Traywick, had the intent to hinder, delay or defraud H. C. Keeble & Co. in the sale of these goods to Traywick, and that defendant participated in W. R. Yeldell's fraudulent intent, or had such circumstances before him at the time of his purchase of said goods as to put him on inquiry, they should find for the defendant, if he paid a fair price for the goods in money and a valid debt, and at the time of the purchase and payment of the goods had no notice or knowledge of H. C. Keeble & Co.'s claim or demand against W. R. Yeldell for these goods." (6.) "If the defendant purchased the goods, the subject-matter of suit, in good faith, and for a valuable consideration, from W. R. Yeldell, without any notice of any fraudulent intent on the part of Yeldell to defraud H. C. Keeble & Co., they must find for the defendant." (7.) "Although

[Traywick v. Keeble & Co.]

the jury may be satisfied from the evidence that W. R. Yeldell purchased the goods from Keeble & Co. with the intent to defraud them, and by fraudulent representations; still, unless the evidence in the case reasonably satisfies them that Traywick participated in the fraud when he purchased the goods from Yeldell, or before that time, then they should find for the defendant." (8.) "If the jury believe from the evidence that T. W. Traywick paid a fair price for the goods he received from W. R. Yeldell, then, before the plaintiffs can recover in this case, the jury must be reasonably satisfied from the evidence in the case that, at the time of the purchase of the bill of goods by W. R. Yeldell from plaintiffs, that W. R. Yeldell was insolvent, or in failing circumstances, and that he purchased the goods by false representations, and that the goods were purchased with no intention or reasonable expectation of paying for them, and without disclosing his, W. R. Yeldell's, condition to H. C. Keeble & Co., or furnishing them the means of information, and that T. W. Traywick knew of the fraudulent intent of W. R. Yeldell, or that there were circumstances sufficient to put Traywick on inquiry; and if plaintiffs have not reasonably satisfied the jury of these facts, and defendant has shown that he paid a reasonable and fair price for the goods he got from said Yeldell, then their verdict should be for the defendant."

The refusal of the charges asked is assigned as error.

STALLINGS & WILKINSON, for appellant. (No brief on file.)

G. A. ROBBINS, contra, cited 2 Kent's Com. 541–50; Bump on Fraud. Conveyances, 254, 399; *Brutus v. Tisdall*, 4 Barb. S. C. 571; *Wilson v. Robertson*, 21 N. Y. 587; *Hopkins v. Langton*, 30 Wisc. 379; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Crawford v. Kirksey*, 55 Ala. 282; *Loeb & Bro. v. Peters & Bro.*, 63 Ala. 243; *Loeb & Bro. v. Flash Bros.*, 65 Ala. 526; *Lehman, Durr & Co. v. Kelly & Bro.*, 68 Ala. 192; *Seaman v. Nolen*, 68 Ala. 463; *Hodges v. Coleman*, 76 Ala. 103; *Proskauer v. Savings Bank*, 77 Ala. 257; *Pritchett v. Pollock & Co.*, 82 Ala. 169; *McDowell v. Steele*, 87 Ala. 493.

McCLELLAN, J.—The theory of the present action on the part of plaintiffs is, that the property in controversy belonged to them. They claim that one Yeldell, being at the time insolvent, and having no intention of paying, nor reasonable expectation of being able to pay, for the goods, induced Keeble & Co., by false representations as to his ability and purpose

[Traywick v. Keeble & Co.]

to pay, to sell and deliver them to him; that they, exercising the right which accrued to them from these facts, rescinded the sale, and revested the title in themselves; and that thereafter the defendant converted the property to his own use, to their damage in the sum claimed. Against the action proceeding on this theory, but two lines of defense were open to the defendant, it not being controverted that he appropriated the property to his own use; *first*, that no such fraud was committed by Yeldell in the purchase from Keeble & Co. as entitled the latter to rescind the sale and reclaim the goods; and *second*, that notwithstanding the fraud and right to rescind and reclaim, he purchased from Yeldell for value and without notice, actual or constructive, of the fraud of Yeldell, or the claim of Keeble & Co.—*Loeb & Bro. v. Flash Bros.*, 65 Ala. 526; *Hornthall v. Schonfeld*, 79 Ala. 107; *Le Grand & Hall v. Eufaula Nat. Bank*, 81 Ala. 123; *Robinson v. Levi, Ib.* 134: *Wollner v. Lehman*, 85 Ala. 274; *Darby v. Kroell,* 92 Ala.

The principles of law which obtain in a contest between a creditor on the one hand, and a purchaser from his failing debtor on the other, manifestly have no application here. The plaintiffs do not seek to subject the property sold by Yeldell to the defendant to the satisfaction of a debt they held against Yeldell, for, on their theory, they have no debt against Yeldell. They do not claim that Yeldell sold *his* property to defendant to hinder, delay or defraud his creditors, and themselves among the number; but that Yeldell, having possession of *their* property, delivered to the defendant, and the latter converted it to his own use. It is wholly immaterial what were Yeldell's intentions in making this delivery. Whatever they were, whether to pay thereby an honest debt which he owed Traywick, or for a present money consideration, he had no right to make the alleged sale and delivery to the latter of property which did not belong to him. It is equally immaterial what motives actuated the defendant in coming into the possession of the property, and withholding it from plaintiffs, provided he knew, or might, with due inquiry, have known of plaintiffs' claim; or whether he took the property in payment of a debt, or paid money for it. However fair the price the defendant paid for the goods, however good Yeldell's intentions were in selling them to him in satisfaction of a debt or otherwise, he had no right to sell if Keeble & Co. had a right to rescind, and did rescind the original sale; and the defendant had no right to buy if he had notice, or could, with proper inquiry, have had notice of plaintiffs' claim. On the other hand, if he had no such notice, and did not know facts which

should have put him on inquiry, which, if diligently prose-cuted, would have brought him to a knowledge of plaintiffs' claim, there could be no recovery against him in this action, although it might appear ever so clearly that Yeldell's pur-pose was to defraud his creditors, and that the defendant pur-chased from him for a cash consideration, in whole or in part, or even that the price paid was greatly less that the value of the property, provided he parted with a consideration of some value, as distinguished from a mere good consideration. Sev-eral of the charges requested by the defendant raised inqui-ries which would have been pertinent had the plaintiffs attacked the alleged sale by Yeldell to Traywick from the standpoint of a creditor of the former, and as being a fraud on them in that capacity, but which have no bearing on the real issues in the case as presented by the pleadings and proof. Of this character are charges numbered 2, 4 and 5. They could serve no purpose in this case, but to confuse and mislead the jury, and each of them was properly refused.

As we have said, it was open to defendant to defeat this action, by showing that he was a purchaser for value and without notice, either of the fraud practiced on Keeble & Co., or of facts sufficient to put him on inquiry which, if prosecuted, would have given him such notice. There was evidence ad-duced, which tended to show he had actual notice of the fraud, and of Keeble & Co.'s claim, and also that he knew of facts which should have excited his suspicions and induced inquiry. As either this actual notice, or knowledge of these suspicious facts, was sufficient to destroy his defense, which proceeded on the theory that he was a. purchaser for value, the charges requested, which claimed a verdict for him, should have nega-tived both these affirmative considerations, as if the jury be-lieved either to exist the defense was not made out.—*Loeb & Bro. v. Flash Bros.*, 65 Ala. 526; *Hodges v. Coleman*, 76 Ala. 103. On this principle, charges 1 and 6 were properly refused. Their tendency was to induce a verdict for defendant not-withstanding the jury might have believed that he had knowl-edge of facts suggesting and leading to inquiry which would have disclosed the fraud on plaintiffs, and their claim to the property.

The fraud perpetrated on the plaintiffs was in the original sale by them to Yeldell. Whether Traywick participated in that sale or not, he can not hold the property, if his purchase from Yeldell was made with notice of it, or of plaintiffs' claim of the property. Charges 3 and 7 made the defendant's non-participation in Yeldell's original fraud the basis of a right in him to have the verdict go in his favor.

The fault of the 8th charge requested by the defendant lies. in its requirement that the plaintiff should satisfy the jury that Yeldell made false representations *and* fraudulently concealed his condition, &c., when it was sufficient for the plaintiffs to show, in connection with the facts postulated, *either* false representations, *or* fraudulent concealment.—*LeGrand v. Eufaula Bank*, 81 Ala. 123.

We find no error in the record, and the judgment of the Circuit Court is affirmed.