# Hudson v. Bauer Grocery Co.

*Action of Trover by Vendor against Sub-purchaser of Goods.*

1. *Action of trover; when fact of check being dishonored relevant to show insolvency.*—When a vendor of goods who sold them on a credit claims the right to rescind the sale on the ground that the purchaser was insolvent at the time of the purchase and, having no intention nor reasonable expectation of paying for them, fraudulently concealed or misrepresented his condition, and sues the sub-purchaser in trover for their conversion, evidence that the checks of the original purchaser drawn about the time of the purchase from the plaintiff were dishonored by the banks upon which they were drawn, is relevant and admissible; one of the material inquiries in the trial of such a case being whether the original purchaser was insolvent or in failing circumstances when he purchased the goods from the plaintiff.

2. *Same; when evidence that the debtor had a reputation of being slow about paying his debts admissible.*—In such a case the fact that the original purchaser was slow about paying his debts, is admissible as

[Hudson v. Bauer Grocery Co.]

tending to show his insolvency; and when the original purchaser's insolvency is shown, evidence that he had a reputation of being slow about paying his debts is admissible, as tending to show the sub-purchaser's knowledge of such insolvency.

3. *Same; evidence that the plaintiff employed a detective to hunt up evidence inadmissible.*—Evidence which has no relation to any issue in a case, or does not tend to discredit any part of the testimony adduced therein is inadmissible; and in an action of trover by the vendor of goods, against a sub-purchaser, in which it is claimed that the original purchaser of goods fraudulently concealed or misrepresented his condition to the plaintiff, the fact that the plaintiff employed a detective to hunt up evidence in the case is inadmissible; the proposed evidence having no relation to any issue in the case, and not tending to discredit any particular testimony adduced by plaintiff.

4. *General affirmative charge; when properly refused.*—When the evidence in the case is directly or inferentially conflicting on any of the real issues in the case, the general affirmative charge requested by either party is properly refused.

5. *Same; when its refusal will not be reviewed.*—The refusal of the trial court to give the general affirmative charge requested by one of the parties to a suit will not be reviewed on appeal, when the bill of exceptions does not purport to set out all the evidence.

6. *Action of trover by vendor against the sub-purchaser of goods; the purpose of the re-sale immaterial*—When the vendor of goods sold on a credit, claims the right to rescind the contract on the ground that the purchaser was insolvent at the time of the purchase and, with no intention nor reasonable expectation of paying for the goods, fraudulently concealed or misrepresented his condition, and sues his sub-purchaser in trover for fraudulent conversion, the questions for consideration are, (1), whether the original purchaser was insolvent at the time of the purchase; (2), whether he committed such a fraud as justified the vendor in claiming a rescission; and, (3), whether the sub-purchaser had notice, actual or constructive, of that fraud; but it is not necessary for the vendor to show that the sub-purchaser participated in the fraud practiced upon him by the original purchaser, nor is it material what were the motive and intention of the original purchaser in making the sale to the sub-purchaser; the case not being governed by the principles which apply when the sale of goods by an insolvent debtor to a creditor is attacked by other creditors.

7. *Action of trover; charge erroneous which assumes facts not shown by the evidence.*—Where in an action of trover the evidence shows that the agent of the plaintiff, who made a demand on the defendant for the goods, was, at the time of making such demand, a deputy sheriff of the county, but that he acted in reality as the private agent of the plaintiff, an instruction to the jury, which assumes that the demand for the property was made by the deputy sheriff in his official capacity, is properly refused.

8. *Fraudulent concealment as vitiating as fraudulent misrepresenta-*

*tion; charge of court to jury.*—Where, at the time of the purchase of goods, the purchaser is insolvent, and, with a purpose not to pay for the goods, fraudulently conceals his financial condition, such fraudulent concealment by the purchaser is as vitiating as a fraudulent misrepresentation of his condition; and in an action of trover by the vendor against a sub-purchaser, on the ground that the plaintiff had the right to rescind the original contract of purchase by reason of the fraud practiced upon him by the original purchaser, a charge to the jury which pretermits all inquiry as to whether such original purchaser fraudulently concealed his financial condition at the time of the purchase is properly refused.

9. *Fraudulent purchase of goods; rescission by vendor; burden of proof in action of trover.*—When the vendor of goods disaffirms the sale on the ground of fraud on the part of the purchaser, and brings an action of trover against a sub-purchaser for their conversion, the plaintiff must prove that the original purchaser, being insolvent, obtained the goods on credit by misrepresentation, or by fraudulent concealment of his financial condition, with no intention or reasonable expectation of paying for them; and this proof being made, the *onus* is on the defendant to prove that he was a purchaser of the goods for value; after which the burden is shifted upon the plaintiff to prove that the defendant, when he bought or before he paid the purchase money for the goods, had notice of the fraud in the original purchase.

10. *Charge of the court to the jury; erroneous when submitting question of law to the jury.*—A charge which refers a question of law to the jury is erroneous, and properly refused.

11. *Same; fraudulent purchase of goods; insolvency of purchaser.*—Where the vendor of goods, disaffirming the sale on the ground that the purchaser being insolvent obtained the goods on credit by misrepresentation, or by fraudulent concealment of his financial condition, with no intention or reasonable expectation of paying for them, brings an action of trover against a sub-purchaser for their conversion, and it is shown that though the original purchaser may have had property, which was so held that his creditors could not reach it, and concealing this fact from the plaintiff, he bought the goods in question, having no intention of paying for them, an instruction to the jury that "a man is said to be insolvent when his property can not be made to respond to his debts," is not erroneous; since, under the facts shown in the case, the plaintiff could not force the original purchaser to apply any property that he may have had to the payment of the goods.

12. *Abstract charges.*—Abstract charges should never be given to the jury; but the giving of abstract charges is no ground for the reversal of a judgment, unless it is affirmatively shown that the jury was misled thereby to the prejudice of the party excepting to the giving of such a charge.

13. *Fraudulent purchase of goods; right of rescission by vendor.*—

[Hudson v. Bauer Grocery Co.]

Where the purchaser of goods is, at the time of making the purchase, in failing circumstances, and buys the goods with no intention of paying for them, but for the purpose of paying a debt which he owes to a third person, and fails to disclose these facts to the vendor, such failure is a fraudulent concealment, which, in connection with the facts themselves, authorizes a rescission of the sale by the vendor.

14. *Motion for a new trial; too late when made after appeal taken.* After a cause has been removed to the supreme court by appeal, the trial court has no jurisdiction to entertain, and no power to act upon, a motion for a new trial; and a motion so made comes too late.

APPEAL from the City Court Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action of trover, and was instituted by the Bauer Grocery Company against B. B. Hudson and George M. Hudson on April 23, 1893, to recover damages for the alleged conversion by the defendants of certain goods described in the complaint, which had been purchased from the plaintiff, a business corporation of St. Louis, Mo., in the latter part of March, 1893, by one J. T. Harris. Part of the goods were sold on March 18, and the other part on March 26, 1892, on a credit of 30 and 60 days. The aggregate value of the goods sold was $377.46. J. T. Harris, who was conducting a small business in the city of Birmingham, ordered the goods from the plaintiff by letter and by a postal card, respectively, and upon these orders they were shipped by the plaintiff to said Harris. After the goods had been shipped to Harris and a part of them received, they were sold by Harris to B. B. Hudson. Some of the goods thus sold to B. B. Hudson were delivered from the store of J. T. Harris, and others were delivered from the cars before they were carried to Harris' store. After shipping the goods, the plaintiff, upon being informed that J. T. Harris was insolvent, and was so at the time the goods were ordered from him, disaffirmed the sale, and, through its attorney, made a written demand upon B. B. Hudson for the goods which had been delivered to him by J. T. Harris. This written demand was served upon Hudson by one J. E. Haigler, at the request of the plaintiff's attorney. In the written demand for the goods Hudson was requested to turn over the goods to said Haigler, or their equivalent in money. Haigler, at the time of serving this written demand upon Hudson, was a deputy sheriff of Jefferson county. The de-

mand was made on April 22, 1892, and, upon Hudson refusing to comply therewith, the present suit was brought by the plaintiff against B. B. Hudson and George M. Hudson to recover damages for the alleged conversion of said goods. It was shown in evidence that George M. Hudson had no interest in the business of B. B. Hudson, but was only employed as a clerk.

The evidence for the plaintiff tended to show that, at the time of giving the order to the plaintiff, J. T. Harris was insolvent; that his insolvency was not known to the plaintiff, but was known to B. B. Hudson at the time of the sale of the goods to him by said Harris. There was further evidence for the plaintiff that at the time of the purchase Harris did not intend to pay for the goods. The testimony for the plaintiff further tended to show, as suspicious circumstances characterizing the transaction between Hudson and Harris as fraudulent, that said Hudson hid out some of the goods, erased the marks therefrom; and that the goods ordered by Harris were greatly more than were needed by him for the purpose of carrying on his business, and were, in fact, more than could be put in his place of business. It was also shown that the relations between Harris and Hudson were intimate; that Harris had, prior to that time, defaulted in payment of many of his debts; that his checks had been thrown out of the bank, and that he had the reputation, among the trade, of being insolvent.

The testimony for the defendant tended to show that the goods which were received by B. B. Hudson from Harris were in payment of an antecedent debt due Hudson from Harris, and that the goods were received at their fair market value; that B. B. Hudson had sold many goods to J. T. Harris, and that he considered him good pay, and regarded him as being in a solvent condition at the time of the purchase. The opinion sufficiently shows the rulings of the trial court upon the evidence, and it is deemed unnecessary to set out in detail the facts pertaining thereto.

The court in its oral charge to the jury, among other things, gave the following instructions: (1.) "A man is said to be insolvent when his property can not be made to respond to his debts." (2.) "A person would be in failing circumstances when his property is being placed where his creditors could not reach it." (3.) "If Harris

bought the goods [referring to the goods in controversy] intending to pay some one else with them, and was in failing circumstances, and with no intention of paying for them, this would be a fraudulent concealment that would vitiate the trade, if he afterwards consummated that intention." The defendant separately excepted to each of these portions of the court's oral charge, and also separately excepted to the court's refusal to give each of the following written charges requested by him : (1.) "If the jury believe from the evidence that Harris had, including goods bought from the plaintiff, enough property to pay all his debts, and had not claimed same as exempt, he was not insolvent at that time." (2.) "If the jury believe the evidence, they will find for the defendant, B. B. Hudson." (3.) "The court charges the jury that said Harris was not insolvent or in failing circumstances, if he had the means to pay his debts as they became due." (4.) "The court charges the jury that if they believe from the evidence that the sale by Harris to Hudson was for the purpose of paying an antecedent debt due by said Harris, and was at a fair and reasonable price, without any secret trust or benefit reserved to said Harris, said sale will be upheld in law, although said Harris was insolvent and was so known to be by said Hudson, and although the effect of the conveyance, as known by both contracting parties, would be to leave said Harris without property to pay his other debts." (5.) "The court charges the jury that they must find from the evidence that plaintiff, or the legally authorized agent of plaintiff, made a demand on defendant for the goods, or the proceeds thereof, within a reasonable time after the discovery of the alleged fraud, before they can find for the plaintiff; and the court charges the jury that a demand by a deputy sheriff, in his official capacity as such, would not be sufficient." (6.) "If the jury believe from the evidence that Harris purchased the goods from plaintiff by letter and by postal card, and made no false or fraudulent representations to plaintiff, and if the jury further finds from the evidence that upon the receipt of said orders plaintiff referred same to its local salesman or agent, and said local salesman or agent, investigated the financial standing and condition of said Harris, approved said order and returned same to plaintiff so approved, and that thereupon plaintiff shipped said goods

to said Harris, the court charges the jury that a subsequent sale or transfer of said goods by Harris would not entitle plaintiff to avoid its sale made to him as aforesaid, but that the title to said goods passed to said Harris." (7.) "The court charges the jury that before they can find in favor of the plaintiff, they must believe from the evidence, 1st, that Harris, at the time of ordering said goods, was insolvent; 2d, that at the time of ordering them he had formed the fraudulent design or intention not to pay for them; 3d, that he induced plaintiff to sell him goods on credit by fraudulent concealing his insolvency and his intent not to pay for them; 4th, that Hudson had knowledge of said fraud or notice of such facts, as if followed up would have informed him of said fraud; and the burden of proof is upon the plaintiff to establish each of these propositions, and if it has failed to do so, as to any of them, your verdict must be for the defendant." (8.) "If the jury believe from the evidence that Harris, under all the circumstances attending the purchase of said goods from plaintiff, had the right to retain possession of them and sell them in the ordinary course of trade, and if the jury further find from the evidence that said Harris was entitled to $1,000 worth of personal property as exempt under the constitution and laws of Alabama, and if the jury find that said Harris did not own more than that amount of personal property, including said goods, the court charges the jury that said Harris had the right to dispose of said goods as he saw fit, and could not be guilty of a fraud in disposing of them."

There was judgment for the plaintiff against B. B. Hudson, and judgment in favor of the defendant, George M. Hudson. B. B. Hudson prosecutes the present appeal, and assigns as error the several rulings of the trial court upon the evidence, and the charges given and refused.

After the appeal in the present case was taken, the appellants made a motion in the lower court for a new trial.

B. M. ALLEN, for appellant.

CABANISS & WEAKLEY and NOBLE SMITHSON, *contra.*—1. A non-payment of a business check upon presentation is

[Hudson v. Bauer Grocery Co.]

evidence of the insolvency of the drawer.—*Brown v. Montgomery*, 20 N. Y. 287.

2.  Test of a person's solvency is what could be recovered from him by process—ability to pay—not what he would voluntarily do.—*Janes v. Scott*, 59 Pa. St. 178,. s. c. 98 Amer. Dec. 328.  A debtor is solvent when he has property "amenable to legal process, sufficient to pay his debts;" and *per contra*, where he has not such sufficiency amenable to process, he is insolvent.—*Smith v. Collins*, 94 Ala. 394.  Manifestly, where a debtor's property is exempt, it is not so amenable.—*Churchill v. Wells*, 7 Cold. (Tenn.) 364.  Another definition of insolvency, having the same meaning is, "the inadequacy of a man's funds to the payment of his debts."—*Herrick v. Borst*, 4 Hill (N. Y.) 652.

3.  While insolvency as a fact can not be proved by general reputation, yet evidence of general reputation of insolvency, or of circumstances from which it may be inferred, is admissible in all cases, where, as here, notice is in issue, as tending to prove such notice.—*Woods v. Montevallo Co.*, 84 Ala. 560 ; *Collins v. Jones*, 83 Ala. 365 ; *Price v. Mazange*, 31 Ala. 701; *Cook v. Parham*, 24 Ala. 21; *Bank v. Parker*, 5 Ala. 731 ; *Ward v. Herndon*, 5 Port. 382; 1 Brick. Dig. 847, §§ 610, 616, 617.

4.  The charges requested by the defendant were all properly refused.  The propositions of law governing in this class of cases and controlling the respective rights of the parties, will be found to be stated, with clearness and accuracy, in the following Alabama cases :—*Spira v. Hornthall*, 77 Ala. 137 ; *Kyle v. Ward*, 81 Ala. 120 ; *LeGrand v. Eufaula Bank*, 81 Ala. 123; *Robinson v. Levi*, 81 Ala. 134; *Johnston v. Bent*, 93 Ala. 160 ; *Traywick v. Keeble*, 93 Ala. 498 ; *Loeb v. Flash*, 65 Ala. 526.

McCLELLAN, J.—One material inquiry on the trial below was whether J. T. Harris was insolvent or in failcircumstances when he purchased goods from the Bauer Grocery Co., on the 18th and 26th days of March, 1892. As pertinent to that inquiry, it can not be doubted that the evidence of Overstreet, Scott, Didlake and Marcks, to the effect that checks drawn about that time by said Harris individually and as a member of the firm of Harris Bros. were dishonored and thrown out by the banks upon which they were drawn, was properly allowed to

go to the jury.—*Brown v. Montgomery*, 20 N. Y. 287.

Another material inquiry in the case was whether the defendant, Hudson, had knowledge or notice of the facts which constituted the right of plaintiff to rescind the sales to Harris and reclaim the goods. One of those facts being Harris' insolvency, and there being evidence that he was insolvent, it was competent, as tending to bring notice of his insolvency home to Hudson, to prove that he had the reputation of being, and "was, mighty slow about paying his debts." The fact that Harris was slow about paying his debts was indeed some evidence of insolvency and admissible on that ground. The fact that *he had the reputation* of being slow in that regard, while not admissible to prove insolvency, was well received as tending to show Hudson's knowledge of Harris' embarrassed condition, shown to exist by other evidence, when the former purchased the goods in controversy from the latter.—*Branch Bank v. Parker*, 5 Ala. 731; *Price v. Mazange & Co.*, 31 Ala. 701.

Many questions were put by defendants to plaintiff's witness, Dunham, who was an agent of plaintiff, for the purpose of showing that he, as such agent, or the plaintiff, had employed a detective to hunt up evidence in the case. These questions were disallowed by the court on plaintiff's motion, and exceptions were reserved by the defendants. There was no error in this. The proposed evidence had no relation to any issue in the case, nor did it tend to discredit any particular testimony adduced by the plaintiff, but the fact sought to be proved might have been used in argument to unduly and wrongfully prejudice the jury against the plaintiff, and against the credibility of the evidence offered by the plaintiff, though, as far as the record discloses, no fact brought to light by the detective was in evidence before the jury.

There are several other exceptions by defendant to the rulings of the trial court on the admissibility of testimony, but we deem it unnecessary to discuss them. They are, in our opinion, without merit, and we shall not devote any time to them, especially since the appellant's counsel has not deemed them worthy of a brief.

The bill of exceptions does not purport to set out all the evidence, and for this reason we can not affirm that the lower court erred in refusing to give the general charge requested by the defendant. Moreover, to say

[Hudson v. Bauer Grocery Co.]

the least, the evidence was directly or inferentially conflicting on all the real issues in the case; and for this, the court properly refused the general affirmative charge to the defendants.

Charges 1 and 3 requested by defendants are abstract. There is no evidence shown by this record that Harris, when he ordered the goods from plaintiff, had enough property to pay all his debts as they became due, and this regardless of the exclusion or inclusion of his exemptions and of the goods he bought from plaintiff.

On principles explained in *Traywick v. Keeble & Co.*, 93 Ala. 498, charge 4 was properly refused.

Charge 5 is bad in that it assumes that the demand made on the Hudsons by Haigler was in the latter's capacity as deputy sheriff, when the evidence shows that he acted in reality as the private agent of the plaintiff.

Charge 6 of defendant's series is bad in that it pretermits all inquiry as to whether Harris fraudulently concealed his financial condition. Such fraudulent concealment, with a purpose not to pay for the goods ordered, is as vitiating as fraudulent misrepresentations.

Charge 7 was well refused to the defendants because it puts the burden of proving notice to the defendants absolutely and unconditionally on the plaintiff, when the rule is that the *onus* of proving such notice is upon the plaintiff in actions like this only where the defendant is shown to be a puchaser for value. The necessary effect of the charge would have been to require the plaintiff to prove that Hudson had notice of Harris' fraud, though the jury might have found that Hudson was a mere volunteer in the transaction, having no rights, either with or without notice other than Harris, the fraudulent vendee, would have had.—*Kyle v. Ward*, 81 Ala. 120. This charge is also bad in that it assumes that Harris must be shown to have been insolvent, when it would suffice to show that he was in failing circumstances.

Charge 8 is bad in that it refers a question of law to the jury, namely, whether Harris, under all the circumstances, was entitled to retain the goods as against the plaintiff. It was the jury's province to find what these circumstances were, and upon their finding the rights of the parties were to be determined by the court through

instructions to the jury. The latter part of this charge is, moreover, an abstraction in this case. If the goods belonged to Harris in such sense as that they might constitute in part his exemptions from levy and sale for the payment of debts, his sale of them to Hudson would be good against the plaintiff wholly irrespective of the existence *vel non* of a right to claim them as exempt.— *Traywick v. Keeble*, 93 Ala. 498. When refered to the facts of this case the oral instruction that "a man is said to be insolvent when his property can not be made to respond to his debts," is not erroneous, however it might be as a general proposition. No matter how much property Harris may have had, if it was so held as that his creditors could not reach it, and, concealing this fact from the plaintiff, he bought the goods in question having an intention not to pay for them, this is as much a fraud on the seller as if he had had no property at all, since though having property he will not, and the seller can not force him to, apply it to the payment of the price of the goods.

The proposition of the court's oral charge, that "a person would be in failing circumstances when his property is being placed where his creditors could not reach it," is in our opinion unsound, but it is also abstract: there is no evidence in this record that Harris' property was being placed where his creditors could not reach it, which means of course, that property which is and continues to be his is being hidden out from his creditors, and not, in the nature of things, that he has disposed of or is disposing of his property, or some part of it, to one or more of his creditors in payment of debts, which is all that is shown here. This charge then was erroneous as a proposition of law, but it was also outside of the case; had nothing to do with the case. *Prima facie* abstract charges do not prejudice the party against whom they are asked because they concern matters not in the case; and they do not afford grounds for reversal, unless we can see they in fact mislead the jury to the prejudice of the party excepting. This we can not see in the present instance.

We understand the remaining clause of the oral charge, to which an exception was reserved, to declare in effect that if Harris was in failing circumstances, and bought the goods for the purpose of paying a debt he owed a

third person with them and had the intent not to pay for them, and failed to disclose these facts to the plaintiffs, such failure would be a fraudulent concealment, which would, in connection with the facts themselves, authorize a rescission of the sale by the sellers; and that is the law as laid down by this court in repeated decisions.

The motion for a new trial was made in the court below after the cause had been removed from that to this court by appeal. It will suffice to say, in respect of the exception taken to the action of the city court overruling that motion, that that court had no jurisdiction to entertain it and, of course, no power to grant it.

The judgment of the city court is affirmed.