**BUY THIS, INC.,**
**Plaintiff/Counterclaim Defendant,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC., d/b/a MCI Worldcom, Defendant/Counterclaim Plaintiff,**

v.

**Baruch Herzfeld, individually, and Dollar Phone Corp., Additional Counterclaim Defendants.**

**No. 01 CIV. 8829(NRB).**

United States District Court, S.D. New York.

July 16, 2002.

Peretz Bronstein, Laura Mello, Bronstein, Gewirtz & Grossman, LLC, New York City, for Herzfeld Parties.

Patrick C. Dunican, Jr., Jennifer Endress, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York City, for MCI.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Buy This, Inc. ("Buy This") brought suit against MCI Worldcom Communications, Inc. ("MCI") in New York State Court for, *inter alia,* breaching a contract for telephone service. MCI subsequently removed the action to this Court and asserted several counterclaims, including claims for fraud and breach of the same contract. MCI also added Baruch Herzfeld and Dollar Phone Corp. ("Dollar Phone") as additional counterclaim defendants (collectively, along with Buy This, the "Herzfeld Parties"). Previously, we denied MCI's motion for an order of attachment. *Buy This, Inc. v. MCI Worldcom Communications, Inc.,* 178 F.Supp.2d 380 (S.D.N.Y.2001). Presently before the Court are cross-motions for summary judgment. We held an oral argument on these motions on April 18, 2002. For the reasons that follow, we grant summary judgment to MCI on its fraud claim against Buy This and Mr. Herzfeld, we grant summary judgment to MCI on its conversion claim against Dollar Phone, and award damages to MCI in the amount of $100,170.34.

## BACKGROUND

### A. Parties

Buy This and Dollar Phone are corporations that engage in the purchase and resale of telecommunications services, namely, long-distance telephone airtime minutes. Mr. Herzfeld is the sole employee and shareholder of Buy This. MCI, *inter alia,* sells long distance telephone airtime minutes.

### B. Facts[1]

As part of MCI's marketing strategy, its representatives telephone potential customers and solicit them to sign up for MCI's telecommunications services. Frequently, in an effort to entice these potential new customers, MCI offers them rates or services not available to existing customers. Thus, in April 2001, MCI was running a promotion whereby new "MCI WorldCom Small Business Services" customers would receive a "free sixth month" of telephone service (the "Promotion").[2] Compl.Ex. A.

Prior to April 2001, Buy This had no commercial relationship with MCI. As part of MCI's strategy to acquire new telecommunications customers, Robert Thompson, a representative of MCI, telephoned Buy This in April 2001 to offer telephone services pursuant to the Promotion. When Mr. Herzfeld answered the phone, Mr. Thompson asked him if he would be interested in hearing about MCI's long distance service. Transcript of November 7, 2001, Deposition of Baruch Herzfeld ("Herzfeld Dep.") at 147. After a brief discussion about long-distance rates to Europe, Mr. Thompson described the terms of the Promotion to Mr. Herzfeld. *Id.* at 148–49. When Mr. Herzfeld heard that MCI's Promotion included a month of free airtime minutes, he immediately realized that Buy This could profit handsomely in the sixth free month by obtaining free minutes from MCI, then reselling them to third parties.[3]

Q:  What was your plan?
A:  To purchase minutes in the sixth month and resell them to other telecommunications carriers. I would buy them—b[u]y minutes from MCI WorldCom during this free sixth month and resell it.
Q:  When did you come up with this plan?

---

1. The material facts of this case are not in significant dispute.

2. Only customers who spent an average of $25 per month for the first five months of their relationship with MCI, and who spent at least $25 in the "free sixth month," were eligible for the Promotion. Compl.Ex. A.

3. Herzfeld testified:

*Id.* at 153–56.

Mr. Herzfeld asked Mr. Thompson for the details of the Promotion, such as whether there was a limit to the number of airtime minutes available to a customer during the free sixth month. *Id.* at 154. Mr. Thompson answered that there was no such limit. *Id.* Nevertheless, perhaps concerned that the Promotion sounded too good to be true, Mr. Herzfeld requested that Mr. Thompson send him a copy of its terms in writing. Mr. Thompson promptly faxed a copy of the Promotion to Mr Herzfeld.

After reading the Promotion and consulting with an attorney named David Scop, Mr. Herzfeld concluded that (a) there was no limit to the number of "free" minutes in the sixth month, and (b) there was no prohibition against reselling these "free" minutes. *Id.* at 154–57. Furthermore, he decided to agree to the Promotion, and telephoned Mr. Thompson to give his assent. *Id.* at 161, 167. While Mr. Herzfeld's memory of these events is not perfect, it is clear that he spoke to Mr. Thompson and others at MCI on several, possibly as many as six, occasions during April 2001. *Id.* at 165–68. During these numerous conversations, Mr. Herzfeld repeatedly confirmed with MCI's representatives that there was no limit to the number of minutes available to Buy This for the free sixth month.[4] *Id.* at 162, 172.

Throughout these discussions, however, Mr. Herzfeld never once disclosed to MCI that, once he reached the sixth month, he intended to resell the "free" minutes to third parties. *Id.* at 156, 162, 169.

Mr. Herzfeld did, however, disclose his plan to his friend and business acquaintance Moses Greenfield, President of Dollar Phone. *Id.* at 29–34 (Mr. Greenfield was a former customer of Mr. Herzfeld when the latter worked at IDT, and thereafter Mr. Greenfield hired Mr. Herzfeld as an employee of Dollar Phone). Mr. Herzfeld showed the Promotion to Mr. Greenfield, and suggested that Mr. Greenfield should follow his lead with Buy This and cause Dollar Phone to take advantage of MCI's Promotion. *Id.* at 186–87. Mr. Greenfield, however, "said he was skeptical [and] didn't want t[o] get involved with it." *Id.* at 187.

Mr. Herzfeld then caused Buy This to commence service with MCI on April 26, 2001. As of that date, Buy This had neither applied for, nor received, a license to resell telecommunications services.[5] *Id.* at 183; MCI's Local Civ.R. 56.1 Statement ("MCI's Rule 56.1 Statement") ¶ 20; Pl. and Counterclaim Def.'s Response to MCI's Local Civ.R. 56.1 Statement ("Herzfeld Parties' Rule 56.1 Response") ¶ 20. In late August or early September 2001, just prior to the commencement of the free

---

**4.** Mr. Herzfeld states:

[During these telephone conversations,] I made it very clear to MCI that I intended to use as many minutes as I could during my

A: As soon as [Mr. Thompson] told me that … the sixth month was free. I was interested in the possibility.

\*   \*   \*   \*   \*   \*

Q: So you thought of that immediately upon Mr. Thompson telling you that the sixth month was free?

A: Yes.

Herzfeld Dep. at 153–56; *see also* Herzfeld Parties' Mem. at 2 n. 1.

free sixth month. I asked Mr. Thompson if he was sure that I could have an unlimited sixth month free. He told me he was sure, and that there was nothing in the promotion that put a cap on it. He told me that I could use "as many minutes as I wanted," that I could "go crazy."

Affidavit of Baruch Herzfeld dated February 15, 2002, ("Herzfeld Aff.") at ¶ 3.

**5.** Buy This subsequently applied for an International Section 214 license to resell telecommunications services. *See* Affirmation of Patrick C. Dunican, Jr., Esq. ("Dunican Aff.") Ex. H.

sixth month, Mr. Herzfeld and Mr. Greenfield agreed that Buy This would resell minutes it obtained from MCI to Dollar Phone in the sixth month.[6] Affidavit of Moses Greenfield dated April 22, 2002 ("Greenfield Aff."), ¶¶ 2–3. Thus, in September 2001, after five months of minimal usage, Buy This began reselling minutes acquired from MCI to Dollar Phone at an astonishing rate. Affidavit of Dante Herrera ("Herrera Aff.") ¶ 14 (MCI's Fraud Control Department detected 980 calls terminating in foreign countries such as Bangladesh, Senegal, and Anguilla for 6,981 minutes with a retail value of nearly $14,000 over a two day period[7]); *id.* Ex. E.

MCI, believing that Buy This was engaged in fraud, refused to provide further service to Buy This. Buy This then sued MCI in New York state court, where it won a temporary restraining order requiring MCI to reinstate service. While the order was subsequently rescinded, during the few days in which it was in effect, Buy This again engaged in massive reselling of international long distance airtime minutes. Herrera Aff. ¶ 50 (stating that the total amount Buy This owes to MCI for the "free" airtime minutes resold during the sixth month is $100,170.34 for 20,986 minutes of service); *id.* Ex. K; *see also Buy This,* 178 F.Supp.2d at 381–82.

## DISCUSSION

### A. Summary Judgment Standard

The Herzfeld Parties moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed. R.Civ.P. 56. MCI subsequently cross-moved for summary judgment. Because the parties have conducted significant discovery, including an extensive deposition of Mr. Herzfeld, we treat the Herzfeld Parties' motion as one for summary judgment. Fed.R.Civ.P. 12(c); *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 53–54 (2d Cir.1985). We accordingly apply the familiar summary judgment standard of Fed.R.Civ.P. 56(c) to these motions. *See, e.q., Pappas v. Giuliani,* 118 F.Supp.2d 433, 436–37 (S.D.N.Y. 2000).

### B. MCI's Claim for Fraud

As our jurisdiction in this matter is founded on diversity, we apply the substantive law of New York to the present dispute. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, to succeed on its claim for fraud,[8] MCI "must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370 (1996). We discuss each of these four elements in turn.

#### 1. Material Omission

MCI alleges that Mr. Herzfeld's failure to disclose his intent to resell air-

---

**6.** According to the oral agreement between Mr. Herzfeld and Mr. Greenfield, Dollar Phone would resell the minutes it obtained from Buy This, and pay Buy This 85% of the amount it received from its customer, IDT. Herzfeld Dep. at 189, 192–93.

**7.** We observe that there are only 2,880 minutes in two days.

**8.** While MCI asserts numerous claims against the Herzfeld Defendants under titles such as Breach of Contract, Unjust Enrichment, and Fraudulent Concealment, it was established at oral argument that MCI will receive complete relief, at least with respect to Mr. Herzfeld and Buy This, if we find that MCI was a victim of fraud.

time minutes acquired from MCI during the free sixth month satisfies the first element of its fraud claim. Omissions, however, only satisfy this element when the omitting party has a duty to speak. *Aaron Ferer & Sons v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984) (applying New York law). Such a duty arises in several situations, but the only one relevant to the case at hand is "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.* It is clear that the facts of this case present exactly the scenario that the superior knowledge doctrine is meant to cover.

During Mr. Herzfeld's telephone discussions with Mr. Thompson and other MCI representatives, he knew that he planned to resell the minutes Buy This acquired from MCI in the free sixth month to third parties. MCI was unaware of this plan. Thus, Mr. Herzfeld possessed material "superior knowledge." [9]

In addition to being "superior," the knowledge must also be shown to have not been readily available to the party alleging fraud. It is undisputed that at the time Buy This entered into an telephone service agreement with MCI on April 26, 2001, Buy This had not yet applied for a reseller license with the Federal Communications Commission. MCI's Rule 56.1 Statement ¶ 20; Herzfeld Parties' Rule 56.1 Response ¶ 20. Thus, on April 26, 2001, Buy This

was not listed on any register of resellers and, accordingly, its status as a reseller, and its plan to resell minutes in the free sixth month, was not "readily available" to MCI. *Cf. Aaron Ferer*, 731 F.2d at 123 (finding that certain knowledge was not "superior" because it was "a matter of public record").

Finally, it is obvious that Mr. Herzfeld knew that MCI was "acting on the basis of mistaken knowledge." First, the face of the promotional materials MCI faxed to Mr. Herzfeld states, *inter alia*, that MCI "delivers the business communication tools your *small business* needs to compete in today's markets" indicating that MCI's offer was meant for small businesses that engage in commerce other than the resale of telephone airtime minutes. Compl.Ex. A (emphasis supplied). Second, Mr. Herzfeld testified that Mr. Thompson told him to "[u]se all the minutes you want" in the free sixth month. Herzfeld Dep. at 173; Herzfeld Aff. ¶ 3. Mr. Thompson's statement clearly indicated to Mr. Herzfeld that MCI expected Buy This to "use" rather than "sell" the minutes provided in the free sixth month. Finally, the business deal contemplated by Mr. Herzfeld—that MCI would give him an unlimited amount of free airtime minutes for him to then sell at a profit—is so patently ridiculous that Mr. Herzfeld must have known that MCI was not aware of his plan.

In sum, we find that Mr. Herzfeld possessed material superior knowledge that

---

**9.** The Herzfeld Parties argue that "any intent of Buy This to resell the [free] minutes was not 'superior knowledge' that gave rise to a duty to speak since disclosure would not have materially changed MCI's legal obligation to offer the Promotion to Buy This." Herzfeld Parties' Mem. at 7 (citing *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 251 Minn. 188, 86 N.W.2d 689 (1957)). *Lefkowitz* is distinguishable, however, because in that case, the plaintiff sought to accept an offer for a fur coat that stated simply, "First Come

First Served $1 Each." *Id.* at 690. Defendant unsuccessfully sought to alter the offer by means of a "house rule" that the offer was meant only for women. *Id.* As this "house rule" was not part of the sufficiently definite offer, the plaintiff had no way of knowing that the offer was only available to women. Here, by contrast, the promotional materials that MCI faxed to Mr. Herzfeld clearly indicate that the offer is meant for small business retail customers, not resellers.

he was duty-bound to disclose to MCI. His failure to do so constitutes the first element of MCI's fraud claim.

### 2. Scienter

MCI must next show that Mr. Herzfeld concealed his plan to resell minutes in the free sixth month with intent to defraud, or scienter. In this regard, New York courts have long held that "[e]very party must be deemed to have intended the natural and inevitable consequences of his acts; and where his acts are voluntary, and necessarily operate to defraud others, he must be deemed to have intended the fraud." *Coursey v. Morton*, 132 N.Y. 556, 560, 30 N.E. 231 (1892). Here, Mr. Herzfeld's omission, and subsequent implementation, of his plan to resell minutes in the free sixth month inevitably worked a fraud upon MCI, and we have no trouble concluding that he did so with scienter.[10]

### 3. Reasonable Reliance

MCI claims that it reasonably relied upon Mr. Herzfeld's silence in entering into the service agreement with Buy This. The Herzfeld Parties argue that disputed issues of fact prevent MCI from making this showing on the present motion for summary judgment. Herzfeld Parties' Reply at 11–13. They contend that MCI "should have, but did not, ask Buy This if it was a reseller or if intended to resell," and that this failure precludes a finding of reasonable reliance. *Id.* at 13. This argument, however, is completely devoid of merit, because MCI reasonably and justifiably relied on the FCC's register of resellers in determining whether a potential customer intended to resell airtime minutes. MCI need not ask each and every potential customer it solicits whether the latter intends to resell minutes to maintain an action for fraud against a party such as Buy This. We find that MCI has sustained its burden of proving reasonable reliance.[11]

---

**10.** Mr. Herzfeld testified that he purposefully hid his status as a reseller from other telecommunications carriers by, *inter alia*, establishing numerous small accounts with telecommunications carriers in various names and in various locations. Herzfeld Dep. at 55–60. As to why he did so, Herzfeld testified:

> Q: So you were trying to prevent Verizon from learning that you were a reseller?
> A: Yes. Or—yes . . . .

Herzfeld Dep. at 78. Furthermore, MCI has presented a business plan for Buy This that Mr. Herzfeld testified to having drafted himself in August 2001. Herzfeld Dep. at 90–91; Dunican Aff.Ex. F (Buy This business plan). Part of this business plan provides for entering into long-term "retail accounts" with telecommunications carriers which "keeps each of [these] accounts as close to an ordinary, retail customer profile as possible." Dunican Aff.Ex. F. When asked about this aspect of the Buy This business plan, Herzfeld testified:

> A: Well, if I, let's say, I signed up with Verizon, the ordinary business customer would do five hundred dollars a month, or a thousand dollars a month, or two thousand dollars a month, or three thousand dollars a month. If I'm able to do

that in a day, [ ] then they would know that I'm doing too much business. . . .

> Q: So you were trying to prevent detection by the carrier, is that correct?
> A: Correct.

Herzfeld Dep. at 108–09. This evidence provides strong circumstantial evidence that Mr. Herzfeld acted with scienter when he failed to disclose his plan to resell minutes in the free sixth month to MCI.

**11.** The Herzfeld Parties also argue that, "[t]o establish a viable fraud claim, MCI must prove that it would have refused to sell the Promotion to Buy This had Herzfeld stated to the salesman that Buy This would resell its Sixth Free Month." Herzfeld Parties Reply at 12. They state that further discovery is needed, such as the deposition of Mr. Thomas, on this issue. We disagree. On the current record, it is inconceivable that MCI would knowingly give away an unlimited number of minutes to Buy This so the latter could then sell them to third parties, and we are confident that further discovery would not affect our analysis. Moreover, the Herzfeld Parties' argument is undercut by their having moved for "judgment on the pleadings." Herzfeld Parties' Mem. at 1.

### 4. Damages

MCI presents the affidavit of Dante Herrera, Senior Manager of MCI's Fraud Control Department, to prove its damages. Mr. Herrera states that Buy This incurred charges of $100,170.34 for 20,986 minutes of service during the free sixth month, including all applicable discounts. Herrera Aff. ¶ 50; *see id.* Ex. K ("call detail" listing all calls made on the Buy This account from September 15 to October 1, 2001). The Herzfeld Parties have offered no evidence challenging this measure of damages. We therefore find that MCI has been damaged in the amount of $100,170.34.

As MCI has proved all four elements of its claim that it was defrauded in the inducement of its contract with Buy This, we grant summary judgment to MCI on this claim.[12]

### C. Breach of Contract Claim Does Not Preclude Fraud Claim

■ The Herzfeld Parties argue that MCI's only potentially viable claim against them is for breach of contract, not fraud, and, as such, MCI's fraud claim is barred by New York law. Herzfeld Parties' Reply at 9–11. They are correct that where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (2d Dep't 1991). In this case, however, MCI is not claiming a breach of contract, but rather fraud in the inducement of making a contract. Under such circumstances, New York courts would permit a fraud claim to go forward.

*Stewart v. Jackson & Nash,* 976 F.2d 86, 88–89 (2d Cir.1992) ("under New York law it is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable.... Thus, fraud in the inducement of a written contract is not merged therein so as to preclude an action for fraud.") (alterations, quotation marks, and citation omitted). Thus, MCI's fraud claim is not merged into a breach of contract claim, and therefore is not barred for the reason proffered by the Herzfeld Parties.

### D. Filed Rate Doctrine

The Herzfeld Parties next contend that the "filed rate doctrine" bars MCI's claim for fraud. Herzfeld Parties' Reply at 4. The Second Circuit has recently explained the filed rate doctrine as follows:

> Federal law requires every common carrier of communications services to file with the Federal Communications Commission ("FCC") a list of tariffs, which are "schedules showing all charges ... and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Carriers are forbidden to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified" in those filed tariffs. *Id.* § 203(c). The goal of these provisions is to ensure that all purchasers of communications services receive the same federally regulated rates. *See MCI Telecomms. Corp. v. American Tel. & Tel. Co.,* 512 U.S. 218, 229–30, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994).

---

**12.** Accordingly, all of Buy This's claims against MCI must fail. *See* Compl. (alleging causes of action for breach of contract, tortious interference with business relationships, and misrepresentation).

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir.2001). It is undisputed that MCI Tariff FCC No. 1 ("MCI's Tariff") controlled the relationship between MCI and Buy This that commenced on April 26, 2001. Herzfeld Parties' Reply at 6; MCI's Reply at 3–4; *see* Affirmation of Laura S. Mello, Esq. ("Mello Aff.") Ex. A (MCI's Tariff). The parties disagree, however, as to whether the Tariff prohibited the resale of airtime minutes by Buy This in the free sixth month.

The Promotion is designated by the Tariff as "Option OO 6th Invoice Free Promotion," and its terms are as follows:

> Customers whose Option OO usage and monthly recurring charges equal or exceed $25 in the sixth monthly period following enrollment in this promotion will receive a credit equal to the customer's Option OO usage and monthly recurring charges in that monthly period.

MCI's Tariff at 1480.23; *see also id.* at 1283 (subtitling "Option OO" as "Advanced Option II for Small Business"). These descriptions are entirely consistent with the terms as described by Mr. Thompson and as understood by the parties. The Herzfeld Parties assert that nowhere in MCI's Tariff is "Small Business" defined and, as such, it does not explicitly exclude resellers who are also small businesses, such as Buy This. Herzfeld Parties' Reply at 7–8.

The Herzfeld Parties fail to take note, however, of a clause in MCI's Tariff that states:

> Service furnished by [MCI] shall not be used ... [f]or any purpose in which payment or other compensation is received by the customer, except when the customer is an entity which holds itself out as being a communications common carrier or being a resale common carrier or an entity which resells [MCI's] service ...

MCI's Tariff at 255.1. The Herzfeld Parties contend that Buy This complied with this term when it filed for a resale license approximately one week after entering into the contract with MCI. This argument is meritless, however, as we have already found that Mr. Herzfeld intentionally concealed Buy This's plan to resell airtime minutes from MCI prior to the parties entering into the contract. The fact that Buy This subsequently applied for a resale license, without specifically notifying MCI of this fact, does not constitute "hold[ing] itself out" as a reseller. Accordingly, Buy This's sale of airtime minutes in the free sixth month violated MCI's Tariff, and MCI was indeed defrauded.

### E. Liability of Mr. Herzfeld and Dollar Phone

We have concluded that MCI was defrauded by Mr. Herzfeld's material omission of his intent to cause Buy This to resell minutes acquired from MCI in the free sixth month. We must next determine whether Mr. Herzfeld himself and Dollar Phone should be held liable for this fraud, in addition to Buy This. As explained below, we find that MCI has proved that Mr. Herzfeld is personally liable for the fraud he perpetrated against MCI, and that Dollar Phone is liable to MCI for conversion.

We observe first that Mr. Herzfeld's status as a corporate officer does not shield him from liability for MCI's losses. The New York Court of Appeals has recently reaffirmed that "[i]n actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55, 735 N.Y.S.2d 479, 483, 760 N.E.2d 1274 (2001). Here, there is no doubt that Mr. Herzfeld personally participated in defrauding MCI. Indeed, he

alone designed and implemented the fraudulent scheme.

■ Mr. Herzfeld attempts to defends his actions by claiming to have relied in good faith upon advice from counsel. Letter from Peretz Bronstein dated April 23, 2002. This defense has heretofore only been recognized in the securities fraud context. *SEC v. Caserta*, 75 F.Supp.2d 79, 94–95 (E.D.N.Y.1999) (collecting cases).[13] In other types of cases, such reliance on counsel can nevertheless defeat the scienter element of a fraud claim. Here, however, Mr. Herzfeld received advice from his attorney several months after commencing the fraud of which MCI complains.[14] *See* Letter from David O. Klein to Baruch Herzfeld dated August 9, 2001 ("8/9/2001 Ltr."). Accordingly, he could not have relied on this advice at the time he caused Buy This to enter into the contract with MCI.

Moreover, Mr. Herzfeld was not advised "that the [proposed] action would be legal," as required by, *inter alia*, *SEC v. Scott*. 565 F.Supp. at 1534. The advice reads, in pertinent part, "While we certainly do not endorse your proposed plan, our initial review of the [ ] applicable documentation does not reveal anything in particular that would expressly preclude Buy This [ ] from doing what you have contemplated." 8/9/2001 Ltr. Based on this language, Mr. Herzfeld contends that his attorney had "advised [him] that it was permissible" to sell airtime minutes acquired from MCI during the free sixth month. Herzfeld Supp.Aff. ¶ 5. This is an unreasonable interpretation of the letter, however, which

merely states that the proposed action is not "expressly preclud[ed]" in the documentation provided to counsel, not that it is "permissible." Accordingly, our conclusion that Mr. Herzfeld acted with scienter is not affected by his purported reliance on this letter.

■ Furthermore, we grant summary judgment to MCI on its claim against Dollar Phone for conversion. To maintain an action for conversion under New York law, MCI must prove that (1) it had "legal ownership or an immediate superior right of possession to specific identifiable personal property," and (2) Dollar Phone "exercised unauthorized dominion over the property to the exclusion of [MCI's] rights." *Aetna Cas. & Sur. Co. v. Glass*, 75 A.D.2d 786, 428 N.Y.S.2d 246, 247 (1st Dep't 1980). Here, it is undisputed that MCI held legal ownership of the airtime minutes that were transferred to Buy This. Dollar Phone, however, is in the position of transferee of the fraudulently obtained airtime minutes. With regard to such transferees, while an innocent purchaser for value who lacks notice that his vendor had obtained the goods through fraud is not liable for conversion, if the purchaser has knowledge of the fraud he is indeed liable for conversion. *See, e.g., Traywick v. Keeble*, 93 Ala. 498, 8 So. 573, 574–75 (1890). *Compare Hoffman v. Alpern*, 193 Misc. 695, 85 N.Y.S.2d 561, 562–63 (N.Y.City Ct.1948) (granting summary judgment to transferee defendants because they were "bona fide purchasers for value without notice of the alleged fraud") *with Charles Kreisler, Inc. v. Matusow*, 144 N.Y.S.2d

---

**13.** The lone case cited by the Herzfeld Parties for the proposition that "Mr. Herzfeld is entitled to the fraud defense that he relied in good faith on the advice of his counsel" is *SEC v. Scott*, in which the SEC brought suit under the antifraud provisions of the Securities and Securities Exchange Acts. 565 F.Supp. 1513, 1515 (S.D.N.Y.1983).

**14.** Although Mr. Herzfeld testified that he had spoken to another attorney, Mr. Scop, before causing Buy This to enter into the agreement with MCI, Herzfeld Dep. at 153, he only claims to have actually relied on the advice of Mr. Klein. Herzfeld Supp.Aff. ¶¶ 2–5; Herzfeld Dep. at 184–86.

568, 570 (N.Y.Sup.Ct.1955) (finding transferee defendants with notice of the underlying fraudulent transaction liable for conversion). In the present case, there is no doubt that Dollar Phone, through Mr. Greenfield, was fully aware of the relevant facts surrounding the transaction through which Buy This had obtained the airtime minutes. Herzfeld Dep. at 186–88 (Mr. Herzfeld suggested that Mr. Greenfield cause Dollar Phone to take advantage of the free sixth month, but Mr. Greenfield "was skeptical [and] didn't want [to] get involved with it"). As knowledge of these "facts and circumstances [ ] would have put prudent and cautious men on inquiry," it cannot be said that Dollar Phone was an innocent purchaser of the minutes. *Morrow Shoe Mfg. Co. v. New Eng. Shoe Co.*, 57 F. 685, 695 (7th Cir.1893). As such, Dollar Phone is liable to MCI for conversion.[15]

## CONCLUSION

For the reasons stated above, we deny Buy This's motion for judgment on the pleadings or summary judgment, grant summary judgment to MCI on its fraud claim against Buy This and Mr. Herzfeld, grant summary judgment to MCI on its conversion claim against Dollar Phone, and award damages in the amount of $100,170.34. The Clerk is respectfully directed to enter judgment for MCI in the amount of $100,170.34 plus interest accruing from this date against Buy This, Mr. Herzfeld, and Dollar Phone, all of whom are jointly and severally liable for this amount.

**IT IS SO ORDERED.**

---

**15.** Finally, we acknowledge Mr. Greenfield's statement that he "would not have made any agreement with Buy This to resell any minutes obtained from MCI, nor would [he] have resold such minutes, had [he] not been advised that it was legal to do so." Greenfield Aff. ¶ 3. It is well settled, however, that "wrongful intent is not an essential element of [ ] conversion. It is enough ... that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it."

*Boyce v. Brockway*, 31 N.Y. 490, 493 (1865). Still, Mr. Greenfield's assertion is nevertheless relevant, because "in an action for damages where the conversion is not wanton or willful, the correct measure of damages is the value of the property at the time of the conversion." *Barrington v. Offenbach,* 163 N.Y.S. 423, 425 (1st Dep't 1917). Dollar Phone is therefore liable to MCI to the same extent as are Buy This and Mr. Herzfeld, namely, for $100,170.34.