# LeGrand & Hall *v.* Eufaula National Bank *et al.*

## Trover for Conversion of Goods.

1. *Fraudulent purchase of goods; rescission by vendor.*—To authorize the vendor of goods to disaffirm the sale, and to recover in detinue or trover against the purchaser, or sub-purchaser with notice, the concurrence of three facts must be shown: 1st, the purchaser must have been at the time of the sale, insolvent, or in failing circumstances; 2d, he must have had, at the time a preconceived intention not to pay for the goods, or (what is deemed its equivalent) no reasonable expectation of being able to do so; and, 3d, there must have been, on his part, an intentional concealment of these facts, or a fraudulent representation in reference to them.

2. *Same; re-sale to purchaser for value without notice.*—Although the original sale was voidable for fraud, at the election of the vendor, he can not recover against a sub-purchaser for value who had no notice of that fraud.

3. *Partnership by married woman.*—When a married woman carries on business under the assumed name of a partnership, as " S. & Co.," she may be sued in the partnership name, and can not plead her coverture in defense of the action; being estopped from denying the existence of the partnership, when sued by creditors who have dealt with her on the faith of it.

4. *Usury as affecting claim of purchase for value in good faith.*—When

usury enters into the consideration paid for property by a purchaser, and the consideration is entire and indivisible, he is not regarded as a *bona fide* purchaser; but, when there are two distinct and severable considerations, and usury enters into one of them only, this does not render the purchaser *mala fide* in a court of law.

APPEAL from Circuit Court of Barbour.

Tried before Hon. JOHN M. CHILTON.

This was an action of trover brought by LeGrand & Hall, original vendors, against the Eufaula National Bank and Robert Moulthrop, sub-purchasers from Stow and Company, original vendee, for the conversion of one hundred barrels of flour.

There was evidence tending to show that on the 10th day of February, 1885, plaintiffs sold "Stow and Company," a mercantile house doing business in Eufaula, a bill of goods consisting wholly of flour, on a credit of sixty days; that "Stow and Company" was Raburn S. Stow, a married woman; that E. Stow managed and conducted the business and negotiated the purchase; that no disclosure of the identity of Stow & Co. was made to plaintiffs, and no inquiry pertaining thereto was made by them; that E. Stow conducted the transactions between the sub-purchasers, defendants, and Stow & Co., and there was no evidence of knowledge of the identity of Stow & Co. by defendants, except as disclosed by the written contract under which the goods were transferred to defendants. It was admitted that of the goods sold by plaintiffs to Stow & Co. the defendants came into possession of four hundred and sixty-four dollars ($464.00) worth, and held them at the commencement of this action. There was evidence tending to show that on the 10th of February, 1885, "Stow & Co." were heavily indebted to various parties on their own account, and as indorsers and acceptors for others, and were insolvent; that defendants knew of said indebtedness at that time, and that Stow & Co. was never other than Mrs. Raburn S. Stow on the 31st of March, 1885, the date of their purchase from Stow & Co.; that Stow & Co. owed the defendant bank about $19,000.00, which indebtedness accrued from about April 15th, 1884, to March 4th, 1885, a large majority of it prior to February 10th, 1885; that all of said indedtedness had usury in it except two notes of Stow & Co., amounting to about $900.00, which the Bank had discounted in the regular course of business; that Stow & Co. owed defendant, Moulthrop, about $8,000.00 on or before the 8th of February, 1885, and that on a large part of this sum *interest at ten cent. per annum* was charged, but on the other part *no* interest was charged; that on the 15th day of March, 1885, Stow & Co. and E. Stow

gave the defendant, Moulthrop, a note for $10,000.00 due one year after date and secured the same by mortgage of real estate; that said note was made to cover advances which had already been made to Stow & Co., and were thereafter to be made to the full amount of said note if called for by Stow & Co., but that in fact, only $8500.00 had been advanced to said Stow & Co. under said note and mortgage.

There was also evidence that on the 29th day of March, 1885, Stow & Co. informed the defendants that they were unable to go on in business, and proposed to sell to defendants *all the goods* they had in stock, which included $464.00 worth of the flour sold by plantiffs to Stow & Co. on the 10*th day of February*, 1885 ; that on the 31*st day of March*, 1885, a sale was made to defendants of all the goods, wares, and merchandise, which said Stow & Co. owned or had in their possession, and which constituted their entire stock of goods. The consideration and terms of sale appear from the bill of sale introduced in evidence, which was as follows:

" State of Alabama } Know all men by these presents, Barbour county. ' { that whereas, we, Raburn S. Stow, doing business in the name of Stow & Co. and Edward Stow, are justly indebted to the National Bank in the sum of nineteen thousand four hundred and twenty-four 73-100 dollars ($19,424 73-100), and are also indebted to Robert Moulthrop in the sum of eight thousand and seven hundred dollars, said debt to said Moulthrop being evidenced by our promissory note to him for ten thousand dollars, payable on the 17th day of March, 1885, after date and duly secured by mortgage executed on same day, but upon which said note and mortgage said Moulthrop has only advanced us to this time the sum of eight thousand and seven hundred dollars ; now in consideration that said Eufaula National Bank acknowledged *full payment* and discharge of our said indebtedness to it of said sum of nineteen thousand four hundred and twenty-four 73-100 dollars, and *has surrendered to us all the evidence of said indebtedness* which it held, and in consideration that the said Robert Moulthrop *has given us a credit* for the sum of *three thousand and seven hundred dollars* on our said indebtedness to him *in full payment* of said sum of three thousand and seven hundred dollars ; and for the further consideration that said Eufaula National Bank, and said Robert Moulthrop, *do assume the liabilities* which we are under for lease of the two store houses and lots now used and occupied by us on the north side of Broad street, in the city of Eufaula, for the unexpired term of said lease, and for which the *property hereinafter conveyed is subject* to the landlord's lien for rent; said lease being as liens for rent,

said lease being as follows : that for the store house and lot belonging to said Robert Moulthrop being *for sixty* dollars rent per month, and expiring on the 1st day of September, 1885, and that for the store house and lot belonging to Mrs. S. E. Bates and J. K. Bates expires on the 1st day of September, 1886, and the rent being one thousand dollars per annum, payable in equal monthly installments, we have granted, bargained, sold and conveyed and delivered, and by these presents, we do grant, bargain, sell, convey and deliver unto said Eufaula National Bank, its successors and assigns, and to said Robert Moulthrop, the following described property, to-wit, the entire stock of goods and merchandise, both dry goods and groceries of every kind and description, which we have in the said two store houses used and occupied by us in the city of Eufaula, including also all the store furniture and fixtures which belong to us, and the iron safes, and all goods and merchandise which may be in any out-house or either of said store lots, saving and excepting from this conveyance the goods and merchandise in said stores which have been set apart and delivered to A. H. Merrill and McKleroy & Comer in payment of indebtedness to them. Also conveying to said Eufaula National Bank and said Robert Moulthrop the unexpired terms of leases of said two store houses and lots on which they are situated in the city of Eufaula. Also all the choses in action specified in the list hereto attached marked Exhibit A, and made a part of this instrument. To have and to hold all of said described property to said Eufaula National Bank and said Robert Moulthrop, and their respective interest in the same to be in proportion to the amount of consideration which has been paid by each as heretofore recited. In testimony of all which we hereunto set our hands and seals, this 31st day of March, A. D. 1885."

"Witness:      (Signed)      E. Stow, [seal.]
1. Geo. L. Ulbricht,    (Signed) Raburn S. Stow, [seal.]
2. H. L. Hull."

There was evidence tending to show that the defendant bank *surrendered* to Stow & Co. *all evidence of debt* it held against said Stow & Co., but that defendant Moulthrop surrendered *no* paper to said Stow & Co., and kept all evidence of indebtedness against them and *never endorsed* on his note against said Stow & Co., or on the mortgage to secure it, *any payment* or credit, still holding them wholly unsatisfied, so far as the papers themselves showed.

There was evidence tending to show that within a day or two after the 31st day of March, 1886, plaintiffs learned of the

failure of Stow & Co., and *demanded a return of their goods, electing to disaffirm* the sale to said Stow & Co.

The following charges were requested by plaintiffs and refused by the court:

1.    " If the jury find from the evidence in this case, that the goods, the subject matter of this suit, were sold by the plaintiffs to Stow & Co., on credit, that " Stow & Co." was Raburn S. Stow alone, and that she was at the time of the purchase, has ever since been, and is now a married woman, and that the purchase of the goods was made by E. Stow, the husband of Raburn S. Stow, for " Stow & Co.," without disclosing the identity of " Stow & Co." to plaintiff, then the plaintiff had the right to disaffirm and avoid the sale by so electing within a reasonable time ; and if the evidence shows that the plaintiffs did disaffirm the sale within a reasonable time, such disaffirmance vested them with a right to sue for the goods, although the act of disaffirmance was suggested by other reasons than that Stow & Co. was a married woman."

2.    "In determining whether the defendants, or either of them, are purchasers for value, the consideration paid by them must be considered ; and if it appears from the evidence that the consideration paid on the part of the bank was *in part* a balance on an overdrawn deposit account, and the remainder certain promissory notes or bills of exchange signed, drawn, or endorsed by " Stow & Co.," *this was not a valuable consideration,* if it is shown that Stow & Co. was at the time of the creation of such indebtedness, and at the time of the sale for the payment a married woman ; and if on the part of Moulthrop the consideration paid was an indebtedness of " Stow & Co.," *this was not a valuable consideration,* if, as above stated, it is found that " Stow & Co." was a married woman."

5.    "The fact, if such is shown to be the fact, that the bank and Moulthrop agreed with " Stow & Co." to take her lease at the price she was paying, and that they did take it, and the houses under it, this does not constitute them purchasers of the *goods* for value if they were not otherwise purchasers for value."

6.    " In determining whether the defendants were purchasers *bona fide,* the jury may consider whether the debts, the consideration paid by them, were in whole or in part *usurious,* and if it is shown that the debts due the bank were in part, or in the whole, *usurious,* then the consideration paid by them did not make them purchasers *bona fide.*    And if the consideration paid by Moulthrop was a debt of " Stow

& Co.," a part of which was contracted at a *usurious* rate of interest, then Moulthrop was not a *bona fide* purchaser."

7. "If the jury believe from the evidence, that if the bank had made at the time of its purchase a *reasonable investigation* of Mrs. Stow's financial condition at the time she bought the goods sued for from plaintiffs, they would have ascertained she made such purchase from plaintiffs without reasonable expectation of being able to pay for them, and they further find that she could not have reasonably expected to be able to pay for them when she bought them, they must find for plaintiffs."

8. "If the jury believe from the evidence that any part of the debt against Mrs. Stow was surrendered and given up by the bank in payment for the stock of goods was *usury*, then the bank was not a *bona fide* purchaser of the goods."

8½. "If the jury believe from the evidence that Moulthrop *paid no money or surrendered no property* for the goods conveyed to him by Mrs. Stow, but only agreed to credit Mrs. Stow with a certain amount on her note given him, he is not a *bona fide* purchaser of her goods to the extent of such so agreed to be credited."

9. "If the jury believe from the evidence that at the time the bank made its purchase from Mrs. Stow, it knew that she had been a *large borrower of money at usurious rates* of interest for several weeks, and was otherwise under large pecuniary obligations, and had been for a considerable time, and that she was doing a mercantile business, engaged in buying and selling goods, these facts were sufficient to put the bank on enquiry as to the validity of the title to the property she was proposing to sell; if they find further, from the evidence, that she was *proposing* to sell *all of her merchandise* stock to the defendants and quit business."

11. "If the evidence in this case shows that "Stow & Co." had not a *reasonable expectation* of paying for the goods, then the jury will find for the plaintiffs."

12. "If the evidence shows that "Stow & Co.," at the time of the purchase of the flour, was *insolvent, or had no reasonable expectations* of paying for the flour, it was their, or her duty, to have *disclosed* to plaintiffs their, or her true financial condition, and the *failure to do so was a fraud* upon the plaintiff, which gave them the right to disaffirm the sale within a reasonable time."

The court, *ex mero motu*, among other things charged:

1. "That if Stow & Co., at the time of the purchase of the goods from plaintiffs, intended not to pay for them, or had no reasonable expectation of paying for them, plaintiffs had the right to disaffirm the sale within a reasonable

time after the discovery of such intention or condition, and recover the goods from Stow & Co., or persons claiming under them who were not purchasers for valuable consideration *bona fide* without notice."

2. "If the debts of Stow & Co. to the defendants, which are shown to have been the consideration of the purchase by defendants, embraced or involved usury, then defendants are not purchasers *bona fide* for value without notice, unless they became so by reason of the rule announced in succeeding charge."

3. "That if in the contract of purchase, and as a part of the consideration thereof, defendants assumed in good faith *the liability for the rent* of the houses occupied by Stow & Co., as stated in the written contract in evidence, then the fact, if it be a fact, that the debts due the defendants were usurious, would not have the effect to charge defendants with notice of any right which may have existed on the part of plaintiffs to disaffirm the sale as against their (plaintiff's) vendee."

To subdivision 3 of the charge by the court plaintiffs excepted. Judgment was rendered in favor of defendants.

ROQUEMORE, WHITE & LONG, for appellants.

A. H. MERRILL, and G. L. COMER, *contra*.

SOMERVILLE, J.—Under the rule adopted in this State, three facts must concur in order to justify a vendor of goods in disaffirming a sale of them as fraudulent, so as to authorize a recovery in detinue or trover against the first purchaser, or any sub-purchaser having notice of the fraud.

1. The first purchaser must have been, at the time of the sale, *insolvent*, or in failing circumstances.

2. He must at the time have had either a preconceived *design not to pay* for the goods, or else, what is deemed equivalent, *no reasonable expectation of being able to pay* for them.

3. There must have been on the part of the purchaser, either a *fraudulent concealment* of, or a *fraudulent representation* in reference to one or more of these facts. And within the meaning of the latter rule, an intentional concealment of, or failure to disclose one's financial status would be *per se* fraudulent.

The existence of one of these conditions or facts without the others will not be sufficient. The three must be combined.—*Kyle v. Ward*, present term ; *Loeb v. Flash*, 65 Ala. 526 ; *Spira v. Hornthall*, 77 Ala. 137 ; *Hornthall v. Schonfeld*,

9

79 Ala. 107; *McCormick v. Joseph*, 77 Ala. 236; *Talcott v. Henderson*, 27 Amer. Rep. 501, *note*, p. 504-505; *Durell v. Haley*, 19 Amer. Dec. 444, *note*, p. 446.

There are many authorities which hold to the doctrine that where one buys goods not intending to pay for them, this fact alone will authorize the vendor to disaffirm the sale for fraud, and recover the goods—the rights of no innocent third person intervening.—*Belding v. Frankland*, 8 Lea, 67; s. c., 41 Amer. Rep. 630, *note*, p. 633; 1 Benj. on Sales (Corbin), § 656, *note* 18. But this rule has been discarded in Alabama. So the mere fact that the purchaser was insolvent at the time of the transaction, and concealed or failed to disclose this fact to his vendor, while evidence of fraud, is clearly insufficient alone to vitiate the sale.—*Talcott v. Henderson*, 27 Amer. Rep. 501, *supra* ; *Belding v. Frankland*, 41 Amer. Rep. 630, 632; *Nichols v. Pinner*, 18 N. Y. 295; *Wright v. Brown*, 67 N. Y. 4; 1 Benj. on Sales (Corbin), § 656, *note* 18.

Under this view of the law the court correctly refused the eleventh and twelfth charges requested by the appellants.

2. There was no error in refusing the first charge requested by the plaintiffs. It was erroneous in basing the right of plaintiffs to disaffirm the sale of the goods alone on the invalidity of the sale by them to Stow & Co., the original vendees. Even though this transaction was voidable for fraud, the defendants acquired a good title if they in good faith purchased the goods for value without notice of the fraud in the first sale.

3. It can scarcely be contended that the release and discharge of a debt due to Stow & Co. would not amount to a valuable consideration on the ground that *Stow & Co.* was a reputed partnership consisting alone of Mrs. Stow, who was a married woman. A partnership of this kind can be sued as such under the statute, and the coverture of its members is no defense to the action, the execution on such a judgment running against the partnership and being leviable only on its property. It does not issue against the individual members—being in the nature of a proceeding *in rem* rather than *in personam.*— *Yarbrough v. Bush*, 69 Ala. 170; Code, 1876, § 2904. Nor could Mrs. Stow be permitted to deny the existence of such partnership where its name had been assumed publicly, and credit obtained from the plaintiffs on the faith of its alleged existence. This would be precluded by the principle of *estoppel*, the chief purpose of which is "the promotion of common honesty and the prevention of fraud."—*Caldwell v. Smith*, 77 Ala.

[LeGrand & Hall v. Eufaula National Bank *et al.*]

157. The second charge requested by the plaintiffs assumed the contrary of this to be true, and was further erroneous in withdrawing from the jury all inquiry as to the value and validity, as a consideration of the sale, of the defendants' promise to assume payment of the rent due by Stow & Co. for the premises occupied by them, for which defendants stipulated in the written contract of purchase. This was a binding promise based on a valuable consideration.—*Coleman v. Hatc'er*, 77 Ala. 217. Charge numbered 8½ was also liable to the latter objection, and was properly refused.

4. If the consideration paid for property by a purchaser is entire and indivisible, and usury enters into it, he is not regarded, under our decisions, as a *bona fide* purchaser of such property.—*McCall v. Rogers*, 77 Ala. 349; *Wailes v. Couch*, 75 Ala. 134; *Saltmarsh v. Tuthill*, 13 Ala. 390. Where, however, there are two distinct and severable considerations for a sale, into one of which only usury enters but not into the other, this does not render the buyer a *mala fide* purchaser as to the entire property where the question of title arises in a court of law, as in this case, which is an action of trover, dependent on the plaintiffs' right to disaffirm the sale so as to re-invest themselves with the title to the entire property in controversy. Even if the proposition be maintainable that such a purchaser can be protected as against a superior equity *pro tanto* to the extent of the non-usurious consideration paid, a court of equity alone would have jurisdiction to adjust the rights of the parties, and the power of a court of law would be inadequate for the purpose, dealing as it does with legal titles only, and not with mere equities.

The giving of charge numbered *three* was free from error, as was the refusal to give those numbered *six* and *eight*, requested by the plaintiffs.

The other errors assigned can not, in our opinion, be sustained.

Judgment affirmed.