# Johnston *v.* Bent.

*Trover by Vendor of Goods, against Assignee of Purchaser.*

1.  *Sale of goods on credit to insolvent purchaser; when seller may rescind.*—When an insolvent purchaser procures goods on credit by a fraudulent misrepresentation or fraudulent concealment of his financial condition, having at the time no intention nor reasonable expectation of paying for them, the seller may resc:nd the contract, and reclaim the goods, unless they have passed into the hands of a *bona fide* purchaser without notice; but a mere misrepresentation of his financial condition by the purchaser, "made innocently and in the reasonable belief of its truth," does not give the seller this right of rescission and reclamation.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. JAMES B. HEAD.

MOUNTJOY & TOMLINSON, for appellant, cited *Le Grand v. Nat. Bank*, 81 Ala. 123; *Kyle v. Ward*, 81 Ala. 120; *Spira v. Hornthall*, 77 Ala. 137; *Hornthall v. Schonfeld*, 79 Ala. 107; *McCormick v. Joseph*, 77 Ala. 236; *Talcott v. Henderson*, 27 Amer. Rep. 504; 19 Amer. Dec. 444.

GILLESPY & SMYER, *contra*, relied on the written opinion of Judge HEAD, a copy of which was attached to the bill of exceptions, and in which the cases cited for appellant, with others, were discussed and reviewed.

CLOPTON, J.—On February 20, 1890, Grambs & Buchanan, dealers in musical instruments in Birmingham, purchased on credit sundry organs from appellee, who resided and was engaged in business in Chicago. On May 10, 1890, Grambs & Buchanan made to appellant an assignment of their assets for the benefit of their creditors. Soon thereafter appellee demanded the organs of appellant, and on his refusal to deliver, and subsequent disposal of them, brought this action for their conversion. The case was tried by the judge without a jury, and judgment rendered for plaintiff, from which the appeal is taken, and said judgment assigned as error.

There is no controversy as to the facts. Buchanan, who was in Chicago, on being asked by plaintiff for a statement of the financial condition of his firm, while seeking to purchase

[Johnston v. Bent.]

the organs, made an oral, and gave a written statement, taken from the books of the firm, which were substantially the same. The statements showed that the assets exceeded the liabilities by several thousand dollars.  Upon the faith of these statements, plaintiff sold the organs.  The firm was in fact insolvent at the time they were made, and the goods purchased. Inferences, or conclusions, that might otherwise be drawn from the undisputed facts, as to whether Buchanan innocently made the representation, or had reasonable grounds to believe it, and as to the intent with which the goods were obtained on credit, are precluded by the recitals of the bill of exceptions, to the effect that the evidence showed that the statement, though untrue, "was made by Buchanan innocently, and in the reasonable belief of its truth, and that neither member of the firm of Grambs & Buchanan had either a pre-conceived design not to pay for the goods, or no reasonable expectation of not being able to pay for them, at the time of the purchase." These recitals narrow the consideration to the inquiry, whether the vendee's representation of his financial condition, when made innocently, reasonably believing it to be true, but false in fact, constitutes, in the absence of an intent not to pay for the goods, such a fraud as will entitle the seller to disaffirm the sale, reinvest the property to himself, and bring an action to recover the goods, or for their conversion.

The authorities differ as to what conduct, misrepresentations or concealments constitute such a fraud as will effectively avoid a sale of goods on credit, so as to authorize the seller to reclaim them.   Some hold, that actual artifice, contrivance or false pretense, intended and operative to deceive, is essential; others, that when the vendee induces the owner of goods to sell them on credit by concealing a positive intention not to pay for them, this is a fraud which entitles the owner to disaffirm the contract, and recover the goods from the purchaser, though there may be no fraudulent misrepresentation, or actual artifice; and others, that the concealment from the seller of the buyer's insolvency, known to himself, and that he has no reasonable expectation of ability to pay for the goods, is not sufficient, but otherwise if there be actual deceit.   As a general proposition, sustained by the preponderance of authority, where a party, being insolvent, or financially embarrassed, induces the owner to sell him goods on credit, having an intent not to pay for them, by fraudulently concealing or misrepresenting his insolvency, he perpetrates a fraud, which entitles the vendor to disaffirm the contract and recover the goods from him.

The case made by the record does not come within either

[Johnston v. Bent.]

of these kinds or classes of frauds. No contrivance, or de-
vice, intended to deceive, was used, and there was no *fraudu-
lent* misrepresentation or concealment. We have mentioned
the various statements of the doctrine on this subject by the
authorities for the purpose of showing that all of them rest on
the fundamental principle, that the artifice, representation or
concealment must be fraudulent in its nature and character,
though the authorities differ as to what is sufficient. In *Le-
Grand v. Eufaula Nat. Bank*, 81 Ala. 123, it was declared,
that, under the rule adopted in this State, in order to justify a
vendor in disaffirming a sale of goods as fraudulent, so as to
authorize a recovery in detinue or trover against the purchaser,
there must co-exist at the time of the purchase insolvency, or
failing circumstances, a pre-conceived design not to pay for
the goods, or its equivalent (no reasonable expectation of be-
ing able to pay for them), and a fraudulent concealment of, or
a fraudulent representation in reference to, one or more of
these facts. From this statement of the rule it is manifest,
that intentional fraud in the misrepresentation or concealment
is requisite. But, when considered in connection with the
qualifying observation, "that an intentional concealment of,
or failure to disclose one's financial *status*, would be, *per se*,
fraudulent," we do not understand that it was intended to
state the rule more stringently than as stated in the preceding
cases of *Loeb v. Flash*, 65 Ala. 526; *Spira v. Hornthall*,
77 Ala. 137, and *Kyle v. Ward*, 81 Ala. 120. The evidence
showing the innocency of the misrepresentation as to the
financial standing of the firm, reasonable expectations of be-
ing able to pay for the organs, and the absence of a pre-
conceived design not to pay for them, it is manifest that plain-
tiff was not justified, under the rule declared in *LeGrand v.
Eufaula Nat. Bank*, *supra*, in disaffirming the contract of
sale, so as to reinvest himself with the property, and sue for a
conversion.

It is contended that the rule, as stated in the case last
referred to, is incompatible with other principles, adopted and
applied in many adjudged cases in this State, according to
which, it is insisted, the owner may avoid a contract of sale of
goods into which he has been induced to enter by the buyer's
false representation of his financial state, though he may not
know that such representation is false, and have reasons for
believing it is true, and has no pre-conceived design not to
pay for them. Commencing with *Munroe v. Pritchett*, 16 Ala.
785, this court has repeatedly declared in many cases, that a
misrepresentation of a material fact relating directly to the
subject-matter of a contract—affecting its substance—upon

[Johnston v. Bent.]

which the party to whom it is made has a right to rely, and without the existence of which he would not have entered into the contract, will avoid it, or furnish grounds for an action of deceit, though made innocently. The cases in which this principle was declared, were either actions at law, brought to make the party answerable in damages for the injurious conse-quences of his misrepresentation, or suits in equity for the rescission of contracts, or where the misrepresentation was set up as a defense in an action for the purchase-money at law or in equity. The contestation is founded on a misconception of the extent and effect of the principle. While an innocent misrepresentation of a material fact, inducing a contract, may be regarded in equity as constructive fraud, warranting its avoid-ance, this court has never declared that it constitutes what has been termed a legal fraud, sufficient, by the rules of the com-mon law, to avoid the contract at law, so as to revest the prop-erty and authorize the seller to bring detinue for the recovery of the goods, or trover for their conversion. Says Mr. Benja-min : "As to the buyer's right to rescind a contract induced by false representation, the principles adopted and applied by the courts of equity had, before the judicial act, a much wider scope than those of the common law. At common law, except in the case of an innocent misrepresentation affecting the sub-stance of the contract, the buyer's right to rescind was gov-erned by the same considerations as would have entitled him to maintain an action of deceit; but it seems clear that, to obtain relief in equity, it was sufficient for the buyer to prove that the misrepresentation was a material one inducing the contract, and was false in fact."—1 Benj. on Sales,.§ 695. The rights of the buyer and seller, in this respect, are correlative. The right to rescind does not arise at law, unless the repre-sentation be false to the knowledge of the party making it, or, at least, made by him recklessly, without reasonable grounds for believing it true, or under circumstances showing that he was regardless of its truth or falsity, in which case it can not be regarded as innocently made. A representation, though false, which the party making believes, in good faith and on reason-able grounds, to be true, furnishes no justification for avoiding a sale at law, as obtained by fraud, whatever other remedies may be available.

The special doctrine we are considering arose from the neces-sity of maintaining confidence in making sales of goods on credit, of preserving commercial credit, by requiring candor, honesty and fair dealing. The principal basis of such credit being the financial *status* of the buyer, from which the vendor presumes, and has a right to pres.ime, a *bona fide* intent to

[Johnston v. Bent.]

pay for the goods purchased, and the principles of the common law, governing the avoidability of sales, where the consideration was paid, when induced by fraudulent devices, or where the fraud affected the consideration given, such as fictitious bills, or counterfeit money, or the like, being inadequate to protect the seller against the obtainment of credit by fraud in purchasing goods, embracing other and new phases of deceit, rules specially applicable to sales on *credit* were necessarily introduced; but resting on the essential principle, that the extension of credit must be induced by fraud. In such cases, the fraud arises from a design not to pay, formed before or at the time of the purchase, and misleading the seller as to such extent by the concealment or misrepresentation of the purchaser's insolvency; for the seller has a right to presume, and does presume, from present ability the intent to pay. Also, the intent not to pay may be presumed, when a party purchases goods on a credit without reasonable expectation of being able to pay for them. This species of fraud consists in the concealment or misrepresentation of his financial *status* on the part of the buyer, for the dishonest purpose of concealing the want of reasonable expectation of being able to pay, and thereby deceiving the seller as to the existence of this basis of credit. To apply to a sale, where the extension of credit alone is effected, the principle in respect to the effect and operation of an innocent misrepresentation of a material fact relating to the subject-matter of the contract, would be to eradicate one of the essential elements of such fraud. The question is not as to the effect of the misrepresentation upon the *value* of the promise to pay; it reaches beyond this, to the inception of the promise, embracing the means by which the opportunity to make it was obtained—the credit induced—and the *intent* with which the promise was made. Though many authorities have declared the same principle in regard to an innocent misrepresentation of a material fact, as this court, and though some have stated the doctrine on the subject of sales on credit with great strictness, holding a mere intention not to pay sufficient, none have gone so far as to hold that the purchaser's misrepresentation of his insolvent condition, innocently made, with reasonable grounds for believing it true—an honest mistake—having a reasonable expectation of being able to pay, is such fraud as entitles the seller to disaffirm the sale, so as to authorize him to sue at law for the goods or their conversion.

Reversed and remanded.