# Pelham *v.* Chattahoochee Grocery Co.

*Detinue by Seller to Rescind Sale.*

(Decided May 9, 1906. 41 So. Rep. 12.)

1.  *Sales; Recovery of Goods by Sellers; Rescission; Burden of Proof.*—In order for the seller to rescind the sale and recover the goods for fraud on the part of the buyer, these things must be shows: (1) That at time of purchase the buyer was insolvent or in failing condition. (2) That he designed at the time not to pay for the goods, or had no reasonable expectation of being able to pay. (3) An intentional concealment of these facts, or representations fraudulently made in regard to them, (4) and that the sale was induced by such fraudulent representations. And the burden of proof is on the seller to establish these facts.

[Pelham v. Chattahoochee Grocery Co.]

2. *Same; Purchase from Buyer.*—When the original buyer has been guilty of conduct in the purchase of the goods authorizing the seller to rescind and recover, such sub-purchaser must show that he is a purchaser of the original buyer and paid the reasonable value of the goods or took them at their reasonable value in payment of a bona fide debt.

3. *Same.*—Where the subvendee of a buyer of the goods, who was guilty of conduct authorizing rescission and recovery, held the goods under a secret trust for the original buyer, the seller would be entitled to recover of the subvendee upon proof of facts that would enable him to recover of the original vendee.

4. *Same; Good Faith of Subvendee; Burden of Proof.*—Where a subvendee of goods from an original vendee, who was guilty of conduct authorizing a rescission and recovery by the seller, shows that he paid a reasonable value for the goods,, the burden is upon the seller to show notice to the subvendee of the fraud of the original vendee at the time of the purchase, or before payment of the purchase price.

5. *Same; Consideration.*—The motives of the parties being immaterial, one purchasing goods without notice of the fraudulent conduct of his vendor in the original purchase of his goods, it does not matter whether the consideration was in part cash, or that the price paid was less than the value of the goods, provided the consideration paid was valuable, as distinguished from good consideration.

6. *Same.*—In the absence of fraud in the original purchase of goods by the original purchaser, the fact that such purchaser's vendee bought the goods with intent to defraud the creditors of the original purchaser, will not authorize a rescission and recovery of the goods.

7. *Same; Several Sales; Fraud; Effect.*—Where one sale was made under such circumstances as to justify its rescission and the recovery of the goods so sold, this fact is not sufficient to authorize a rescission and recovery of goods bought at another time, free of fraud.

8. *Same; Instructions.*—An instruction, in an action for rescission and recovery of goods fraudulently purchased, which authorizes a recovery without reference to the solvency or insolvency of the purchaser, at the time of the purchase, is erroneous.

9. *Same.*—An instruction directing an inquiry into whether the fraud of the buyer induced the seller to part with the goods is proper.

10. *Same; Estoppel.*—The seller may request a payment from his vendee without estopping himself or waiving his right to rescind the sale and recover the goods of the buyer's vendee, on the grounds of the fraud of his vendee.

[Pelham v. Chattahoochee Grocery Co.]

APPEAL from Geneva Circuit Court.

Heard before HON. J. P. HUBBARD.

Detinue by the Chattahoochie Grocery Co. against A. Pelham for the recovery of certain goods for fraud and rescission.

The facts necessary to an understanding of the case are sufficiently stated in the opinion. In his oral charge to the jury the court said: "If you are reasonably satisfied from the evidence that at the time Reeves purchased the goods in question he had no reasonable expectation of being able to pay for them, and did not intend to, then this would be a fraud upon the plaintiff, entitling it to rescind the sale and reclaim the goods, without reference to the question of the solvency or insolvency of Reeves." The plaintiff requested the court to give the following charges in writing: "(1) The court charges the jury that, if they believe from the evidence that at the time of the purchase from the plaintiff C. W. Reeves was insolvent, or in failing circumstances, and if you further find that said Reeves knew at the time he was insolvent and could not as a reasonable man expect to pay, or that he was insolvent and intended not to pay, and did not disclose these facts, then the plaintiff is entitled to recover, unless the evidence reasonably satisfies your mind that Pelham was a bona fide purchaser without notice. * * * (3) The court charges the jury that an intentional concealment on the part of Reeves of his insolvency or financial condition is per se fraudulent, and that if they are reasonably satisfied from all the evidence that Reeves intentionally concealed his financial condition at the time of his purchase of the goods from plaintiff, and was in failing circumstances, and had no just expectation of paying for the goods, then you must find for the plaintiff, unless you are reasonably satisfied from the evidence that Pelham was a bona fide purchaser and without notice of such insolvency or of plaintiff's claim. (4) The court charges the jury that the intent to pay, in the absence of a reasonable expectation so to do, will not prevent rescission, if Reeves was insolvent or in failing circumstances at the time of the purchase, and if Pelham was not a purchaser for value of the goods in

controversy. * * * (10) The court charges the jury that, if from the evidence they find that the purchase by Reeves was fraudulent, then the burden is upon Pelham to reasonably satisfy you that he paid value for the goods."

W. O. MULKEY, for appellant.—That portion of the general charge excepted to is erroneous.—*Legrand v. National Bank*, 81 Ala. 120; *Wilkes v. Key, Simmons & Co.*, 117 Ala. 285. Charge 3 given for appellee is erroneous, in that it is abstract, and does not assert a correct legal proposition as applicable to the case at bar— *Authorities supra; Kyle v. Ward*, 81 Ala. 120; *Hornthall v. Schonfield*, 79 Ala. 107; *Loeb v. Flash*, 65 Ala. 526; *Robinson v. Fairbanks*, 81 Ala. 182; *Johnson v. Bent*, 93 Ala. 160; *Darby v. Kroell*, 92 Ala. 607.

It is also erroneous in referring a question of law to the jury.—2 Mayfield's Dig. 577. Charge 4 was erroneous.—*Legrand v. National Bank, supra.* Charge 8 was erroneous.—*Greenwood's Case*, 99 Ala. 501. Charge 14 and 5 should not have been given on the authorities above set out, and on the same authorities, the charges requested by the appellant should have been given.

W. L. LEE and C. D. CARMICHAEL, for appellee.—No brief came to the reporter.

WEAKLEY, C. J.—The action is detinue, to recover divers articles of merchandise such as may usually be found for sale in a grocery store. The plaintiff prevailed in the court below as to all the goods sued for, and the defendant appeals. The claim of the plaintiff was rested on the contention that such fraud was committed by one Reeves, the original vendee, in the purchase of the goods, that as vendor it had the right to rescind the sale and reclaim the goods. The defendant resisted a recovery upon the claim that the proof did not satisfactorily establish fraud in the purchase. or, if it did, that he was a purchaser for value without notice either of the fraud or of facts sufficient to put him on inquiry, which if prosecuted, would have given him such notice. The rules

of law which apply in a case of this kind—a controversy between a vendor seeking to reclaim goods and an alleged subvendee, claiming to be an innocent purchaser for value without notice—have been announced by this court in a series of cases which seem to plainly settle the law on the subject and to indicate the scope and nature of the inquiry. These cases also furnish a sufficient guide as to the burden of proof, and its shifting from one side to the other, as the jury, in consideration of evidence tending to support the one party or the other passes from issue to issue in reaching a conclusion upon the facts. As the principles settled by our previous decisions were not observed upon the trial, we will announce the rules which, under the tendencies of the evidence in this case, should be held steadily in mind by the court when admitting evidence or delivering instructions to the jury.

To authorize the rescission of a sale of chattels on the ground of fraud on the part of the vendee, so that a recovery may be had in detinue or trover against the first purchaser or subpurchaser, these conditions or facts must be combined: (1) The purchaser must at the time of the transaction have been insolvent or in failing circumstances. (2) The first purchaser must have had either a preconceived design not to pay for the goods or no reasonable expectation of being able to pay for them. (3) The purchaser must have intentionally concealed these facts or made a fraudulent representation in regard to them. (4) The sale must have been induced by the fraudulent representation or concealment. And the burden of proof, in the first instance, rests upon the plaintiff to reasonably satisfy the jury of the existence of each of the foregoing requirements. If a plaintiff fails to carry this burden in any of the four particulars, a recovery cannot be had, either against the original vendee or another claiming under him, whether a bona fide or a mala fide purchaser, or even a stranger. If the evidence reasonably satisfies the jury of the existence of each of the essentials above stated, it is incumbent upon one claiming to be subvendee to show that he is in fact a purchaser from the original vendee and that he paid

[Pelham v. Chattahoochee Grocery Co.]

value for the goods; and whether he paid cash, in whole or in part, for the chattels, or took them in payment of a debt due to him from his debtor, he would be a purchaser for value within the meaning of this rule. If the jury should believe from the evidence, including all the facts and circumstances, that what appeared in form to be a sale and conveyance to the defendant was in secret trust for the original purchaser, then the same principles, and those only, would apply that arise in this class of cases against such original purchaser, since one holding goods under a pretended sale in secret trust for the original purchaser must stand in the shoes of such purchaser. If the defendant successfully carries the burden as above indicated, then the onus shifts to the plaintiff to prove to the reasonable satisfaction of the jury that the defendant, a subpurchaser, had notice of the fraud when he purchased, or before he paid the purchase money or parted with the consideration, or had knowledge of facts putting him on inquiry which, if diligently prosecuted, would have brought him to a knowledge of the plaintiff's claim.

The principles of law which obtain in a contest between a creditor, on the one hand, and a purchaser from his failing debtor, on the other, are not applicable in this case and similar cases. The motives of the parties are not material. If the defendant be a purchaser for value without notice or knowledge of facts that would lead to notice, it is not important that the consideration was in part cash, or even that the price paid was greatly less than the value of the property, provided he parted with a consideration of some value as distinguished from a merely good consideration. There might be an absence of good faith, in that the purchase by the defendant was made to defraud the creditors of the original vendee; yet, if the latter committed no fraud in the first purchase, or if the defendant was a purchaser for value without notice, as above defined, the plaintiff could not recover. These rules are the result of all of our previous decisions, although they will not be found stated exactly in the foregoing form; and it may be these principles will not all be found to have been announced in any one case.

We collect these cases from which the principles applicable have been derived.—*Loeb v. Fash,* 65 Ala. 526; *Spira v. Hornthall,* 77 Ala. 137; *Hornthall v. Schonfeld,* 79 Ala. 107; *Kyle v. Ward,* 81 Ala. 120, 1 South. 468; *LeGrand v. National Bank,* 81 Ala. 123, 1 South. 460, 60 Am. Rep. 140; *Robinson v. Levi,* 81 Ala. 134, 1 South. 554; *Darby v. Kroell,* 92 Ala. 607, 8 South. 384; *Johnston v. Bent,* 93 Ala. 160, 9 South. 581; *Traywick v. Keeble,* 93 Ala. 498, 8 South. 573; *Wilk v. Key,* 117 Ala. 285, 23 South. 6.

The earlier cases do not in terms require that the sale must have been induced by the fraudulent representation, or must have resulted from a want of knowledge on the part of the vendor of some material fact which the purchaser fraudulently concealed; but this omission is explained in *Darby v. Kroell,* 92 Ala. 607, 8 South. 384, where it was said: "This absence of reference to the familiar doctrine that fraud for which a contract may be rescinded must have conduced to its execution is due to the fact that the exigencies of those cases did not require a consideration of that question; there being no evidence in any of them which tended to show that the seller did not rely on the statements of the purchaser, and not to the idea that the general rule was not applicable to this class of cases. There is, and can be, indeed, no reason why it should not fully obtain in a case like this and defeat rescission and recovery, when the jury find that, though false representations have been made and fraudulent concealments have been resorted to, the seller did not rely or act on such representation, and was not influenced by a state of facts which the purchaser's concealment induced him to believe existed."

Before treating of such of the instruction to the jury as we propose to specially consider, it may be well to direct attention to the tendencies of the evidence. The goods sued for and recovered were not all sold at the same time. The plaintiff began to extend credit to Reeves, the original purchaser, about August 1, 1902, and the goods were sold to him from time to time during the period intervening between that date and April, 1903, when the last purchase was made. The course of dealing

was that plaintiff's representative would visit Reeves about every two weeks, collect money on account, and sell him other goods, if he desired to buy. For some months before his failure Reeves had owed the plaintiff as a result of their method of dealing, and at one time owed more than the amount of the indebtedness which existed when he failed. At no time prior to the date of the last purchase, about April 1, 1903, did Reeves make, or was he asked to make, any statement as to his financial condition to the plaintiff. On several occasions plaintiff's salesman tried to sell Reeves more goods than the latter wanted, and this was true on the occasion of the last purchase, at which time Reeves paid him more money on account than the amount of the then purchase. Reeves denied having made any statement as to his condition at any time; but plaintiff's representative testified that about April 1, 1903, and prior to that sale, "Reeves stated to him that April 18th would be pay day with some mill hands near there and that he could pay him some considerable sum on his account, that he was getting along well, that his home was paid for, that he owned two houses and was making money, and that the mill hands owed him." There seems to have been no effort by testimony to identify any of the goods sued for as having been a part of the last purchase, or to show when and in how many separate transactions the particular goods were bought, except by the general statement that Reeves purchased the goods from August 1, 1902, to April 1, 1903. The failure of Reeves occurred about two or three weeks after his last purchase of goods, he being insolvent, and took the form, according to the defendant's evidence, of a sale by Reeves to him of his stock of goods, exclusive of book accounts, at the sum of $500, of which the sum of $150 was claimed to have been paid in currency, and for the balance of the purchase price a past-due note of Reeves for $350 was testified to have been surrendered. The evidence conflicted as to the value of the stock, and the plaintiff introduced evidence of a statement of defendant that his purchase included the book accounts also. There was evidence that after the failure Reeves was collecting the accounts, and

that, after being absent a few days, he returned to the store and was engaged there; the defendant claiming that he was employed as a clerk merely. The plaintiff's evidence showed that Reeves started in business with a small stock, which gradually increased; that the stock was open to plaintiff's salesman, and that he could plainly see what Reeves had, although he knew nothing about the book account; and Reeves testified that he did not conceal or make any effort to conceal his condition from Mays, the plaintiff's agent, who dealt with him; that Mays visited his store every two weeks before the failure, for 2 1-2 years, and knew what he had; that his property consisted of a small homestead worth $300, his stock of goods and book accounts, and that Mays often desired to sell him more goods than he would buy.

We have already stated the rules of law applicable to a controversy of this character. Situated as this case is, it is obvious that account should be taken of the circumstance that the court is not dealing with a single purchase, but with numerous separate purchases covering a period of nine months, and that to obtain a proper result application of the true principles must be made to each transaction. There might be fraud justifying rescission in one and not in another, and if there were fraud in one purchase, at the time it was made, and yet the purchase price was thereafter paid, most clearly there could be no rescission of that particular sale. Moreover, if there was fraudulent concealment or misrepresentation, and this was not relied on and did not induce the sale, there could be no recovery; and this principle might operate in one instance to defeat recovery of goods then sold, and not do so in another.

The charges asked on both sides were framed without reference to the separateness of the several purchases, and were formulated as if the jury were dealing with the last purchase alone, at the time of which there was proof of representations as to the financial condition of Reeves. We will not undertake to criticise each charge given and refused, as what we have said will constitute a sufficient guide for another trial. We are not prepared to say the general charge should have been given for the defendant

[Pelham .v. Chattahoochee Grocery Co.]

on the whole case, and it was upon the whole case that it was asked. Whether, under the evidence, there was in reality a sale to Pelham, or whether the sale was in secret trust for Reeves, was a question of fact for the jury, and will be an inquiry of importance if a case justifying a rescission as to any of the goods be made out in accordance with the principles of law herein announced. It was likewise a question for the jury whether Pelham was a purchaser for value and without notice.

That portion of the court's general charge to which an exception was reserved was erroneous in declaring that upon the hypothesis stated a right of rescission existed, without reference to the solvency or insolvency of Reeves. One of the essentials of a right to rescind is that the purchaser must have been insolvent or in failing circumstances.

Charges 1, 3, and 4 given for the plaintiff, pretermitted inquiry whether the alleged fraud of the vendee induced the vendor to sell him, and were improperly gven.

Charge 10, and others like it, postulating a finding by the jury that the purchase was fraudulent, might well have been refused, because not defining to the jury the elements constituting a fraudulent sale, but were not for that reason positively erroneous, since their misleading tendency might have been obviated by an explanatory charge.

It was not an error to disallow defendant to prove that plaintiff had sought to collect the debt from Reeves, or to compromise with him, before bringing this suit. A creditor may well request his debtor to pay for goods purchased, and, if payment be refused, may seek rescission, if the conditions justify it. A creditor does not waive his right of rescission by requesting payment from his debtor. The creditor took no legal action against Reeves, and did nothing inconsistent with the exercise of his right of rescission, if such right existed.

Reversed and remanded.

TYSON, SIMPSON, and ANDERSON, JJ., concur.