TRIPP, Respondent, v. THE MID-WEST INVESTMENT CO., et al, Appellants.

(255 N. W. 805.)

(File Nos. 7645-7648. Opinion filed June 29, 1934.)

*Rice & Rice,* of Flandreau, and *George P. Gurley,* of Pipestone, Minn., for appellant and Cross-respondent.

*W. J. Metzger,* of Olivet, and *Orvis & French,* of Yankton, for Respondent and Cross-appellant.

CAMPBELL, J. Plaintiff Tripp was the payee in and owner of a certain negotiable promissory note executed by one Biermann and others, in the principal sum of $2,500, with interest at 7 per cent, dated March 1, 1930, due March 1, 1933, together with a duly recorded real estate mortgage securing the same. In November, 1930, one Fred L. Crabbe and one Frank R. Beddow induced plaintiff Tripp to part with the Biermann note and mortgage and other property and securities which he owned in exchange for corporate stock of a concern known as Mid-West Investment Company. Pursuant to agreement with Crabbe and Beddow, plaintiff Tripp, on November 18, 1930, indorsed the Biermann note without recourse, executed an assignment of the Biermann mortgage to Crabbe, and delivered the note so indorsed, the mortgage, and the assignment thereof to Crabbe and Beddow. It is conceded that Tripp intended to and did transfer to Crabbe and Beddow at that time both the possession of and the title to said property. It is also conceded that Tripp was induced to sell and transfer said property to Crabbe and Beddow by reason of their false and fraudulent representations as to the value of the corporate stock of Mid-West Investment Company, which they represented to be guaranteed by a responsible surety company for the payment of a 10 per cent semiannual dividend and to be worth par and more and as sound as government bonds, when in truth and in fact, as they well knew, said corporate stock was entirely worthless. On November 26, 1930, Crabbe and Beddow, with Tripp's full knowledge and consent, delivered said Biermann note and mortgage and the assignment thereof to the defendant E. A. Guenthner for the express purpose of negotiation and sale.

On December 6, 1930, Guenthner applied to the defendant-appellant E. J. Feldman at his home in Pipestone, Minn., to purchase said note and mortgage, which Feldman agreed to do, and the note and mortgage were delivered to Feldman together with a duly executed assignment of the mortgage by Crabbe, assignee of Tripp, as aforesaid. Feldman at that time paid to Guenthner for said note and mortgage the sum of $2,200 in the form of $1,000 in cash, the negotiable promissory note of one Abraham Kautz in the amount of $700 (it being conceded that Kautz was solvent and financially responsible and that his said note was worth $700), and his own thirty-day negotiable promissory not in the amount of $500 (which he redeemed ten days later by paying Guenthner $490 in cash).

On March 1, 1930, Abraham Kautz as vendor had executed to one Litke a contract for deed covering certain real property in Menno, S. D. On March 26, 1930, the vendor Kautz had assigned said contract for deed to plaintiff Tripp, at which time Kautz and defendant Feldman guaranteed to Tripp the performance of said contract by the vendees. Apparently this contract for deed was also one of the securities that Tripp transferred to Crabbe and Beddow in connection with the Mid-West Investment Company deal. In any event, when Guenthner, in December, 1930, sought to induce Feldman to purchase the Biermann note and mortgage, Guenthner's wife, Hazille Guenthner, was the owner and holder of the vendor's interest in said contract for deed and as part of the inducement to Feldman to purchase the Biermann note and mortgage the Guenthners released him from all liability under his guaranty on this contract for deed.

In March, 1931, plaintiff Tripp instituted the present action, pleading the fraud practiced upon him by Crabbe and Beddow, seeking to rescind his transactions with them and to recover the various items of property which Crabbe and Beddow had thus fraudulently induced him to transfer to them, some of which they had in turn transferred to others as above recited.

Defendant Feldman answered, claiming ownership of the Biermann note and mortgage by virtue of purchase thereof for valuable consideration in due course of business, asking that plaintiff's complaint be dismissed as to him, and by way of counterclaim that he (Feldman) be adjudged to be the owner of said note and mortgage.

The cause came on for trial before the court, who found the facts substantially as above recited, and further specifically found with reference to Feldman's purchase of the note and mortgage as follows: "That the said Feldman in purchasing the said note and mortgage had no knowledge or notice of the fraudulent representations made as herein set forth by the agents of the Mid-West Investment Company to the plaintiff, and had no knowledge of any defect in the title to said instruments, and that he is a holder in due course and for value of the said promissory note." Upon said findings the learned trial judge made conclusions of law as follows: "That the defendant, E. J. Feldman, is the holder in due course and for value of the negotiable promissory note described above, and that he is the owner of the mortgage described securing the same; that defendant, First National Bank of Pipestone, Minnesota, has no right, title or interest in said note and mortgage; that the title of defendant is free and clear of any claim of plaintiff, except that plaintiff has the right within ninety days of the date of entry of judgment herein, and upon the payment to the defendant, E. J. Feldman, of the sum of Twenty-one Hundred Ninety ($2190.00) Dollars, to the restoration thereof to him, and that said Feldman deposit the note and mortgage described in the Menno State Bank of Menno, South Dakota, the same to remain on deposit during the said ninety day period and said bank upon the payment to it of the amount of Twenty-one Hundred Ninety ($2190.00) Dollars less any principal of or interest on said mortgage note received by the defendant Feldman, is authorized to deliver such note and mortgage to plaintiff contemporaneously with the payment of such money to defendant, Feldman; and further upon such payment that plaintiff be restored to all his rights against the defendant, Feldman, on account of the guarantee of the Contract for Deed referred to, and that the release of the said Feldman on account of said guarantee be cancelled; that in the event restoration to defendant, Feldman, is not made within the period herein provided, that his title to said note and mortgage become absolute, and that his release from the said Contract for Deed be in full force and effect; that defendant, Feldman, recover his costs from the plaintiff herein."

From all the judgment, excepting the portion thereof adjudging him to be the owner and holder in due course of said note and

mortgage, defendant Feldman has now appealed (appeal No. 7645). From so much of the judgment as determines Feldman to be the owner and holder of the Biermann note and mortgage and requires plaintiff Tripp to make certain payments to Feldman as a condition precedent to the restoration of said note and mortgage to him, plaintiff Tripp has perfected a cross-appeal (appeal No. 7648).

■ The judgment in this case required Feldman to deposit the Biermann note and mortgage immediately in a certain bank and directed that if Tripp, within ninety days, made the payments specified in the judgment, the note and mortgage should be surrendered to him (the money going to Feldman); otherwise to be returned to Feldman free of all claims of Tripp. Feldman took his appeal before any payment was made or tendered by Tripp and before the expiration of the ninety-day period. Tripp argues that Feldman's appeal cannot be maintained because Feldman was not at the time of taking the same a "party aggrieved" (section 3145, Rev. Code 1919), inasmuch as the ninety days might expire without any payment by Tripp, in which event the note and mortgage would be returned to Feldman free of all claims on the part of Tripp. To this argument there are at least two answers. If Feldman's contention as to the law is correct, he was at all times the sole, complete, and unconditional owner of the Biermann note and mortgage and entitled to deal with it as he saw fit. Certainly he was aggrieved by being required to part with possession and control of it for a ninety-day period, during which time he could not sell, pledge, or otherwise deal with it as owner, entirely aside from the peril of losing it to Tripp if the payment required by the judgment was made. Also, Feldman counterclaimed, asking to be declared the sole and absolute owner of the Biermann note and mortgage, and if his view of the law is correct he was certainly aggrieved by the entry of a judgment which, instead of declaring his absolute and unconditional ownership, clouded his ownership by subjecting it even temporarily to a sort of quasi right of redemption on the part of Tripp.

There seems some confusion in the briefs, which was likewise apparent upon the oral argument, as to the law applicable to the situation in which Tripp and Foldman find themselves, and there is considerable discussion on the part of Tripp as to whether Feldman falls within the definition (section 1756, Rev. Code 1919 [sec-

tion 52, U. N. I. L.]), of a "due course holder" of a negotiable instrument.

This is not a case where the due course holder of a negotiable instrument who has paid value (but somewhat less than face) therefor seeks to enforce it for the full amount against a party to the instrument (section 1761, Rev. Code 1919 [section 57, U. N. I. L.]), nor is it a case where the assignee of a nonnegotiable chose in action seeks to assert rights against the maker (sections 742, 2307, Rev Code 1919). This is simply a case where the owner of personal property has been induced by fraud to part with possession and title to his personalty. The fraudulent buyer in turn has transferred title and possession to a third person. The original seller now seeks to recover the property (or the value thereof) from such third person by an action in the nature of rescission. If the third person is a bona fide purchaser from the original fraudulent buyer he is protected, otherwise not. It makes no difference whether the property is a negotiable promissory note or a horse, save only that the nature of the property, the usual and customary method and manner of transferring that type of property, or the formalities established by law for the transfer of that type of property, may go to the fact question of the good faith of the third person in making his purchase.

In the instant case Tripp seeks to argue the fact question that Feldman was not a good-faith purchaser (or in the words of the brief "a due course holder") of the Biermann note and mortgage. It is true the court concluded, as a matter of law, that Feldman was a due course holder, but it is equally true that the court found due course holding as a matter of fact. The specific findings of the court amply establish that Feldman purchased for value and with no notice of the fraud worked by Crabbe and Beddow. Both appeals are from the judgment only and the findings of fact cannot now be challenged by either appellant. It is not necessary to constitute a bona fide purchaser that full value be paid, though, of course, a gross disproportion between value and price paid may be a circumstance to be considered (whether standing alone or in connection with other circumstances we need not now decide) in determining the good faith or lack of notice of the purchaser. The court having found that Feldman paid substantial value and had no notice of the fraud of the previous buyer, he

acquired a good and indefeasible title. The rule is well stated in Williston on Sales (2d Ed.) § 650, as follows: "As has already been seen, fraud may sometimes be of such a character as to preclude assent to a bargain by the defrauded person. If goods are obtained in this way no property passes to the fraudulent person, and the defrauded person's title may be asserted even against purchasers for value. But in the ordinary case of fraud, the defrauded person is induced to give his assent to the bargain. If the bargain is a non-negotiable executory contract a party who is defrauded by his co-contractor may, in spite of any assignment, refuse to be bound by the transaction, since even a purchaser for value of a non-negotiable chose in action can stand in no better position than his assigner. If, however, title to a negotiable contract or to goods be secured by fraud, a purchaser from the fraudulent person acquires this title, and if he had no notice of the fraud, and was not a volunteer, no equity exists against him. As commonly expressed, a purchaser for value of the voidable title of the fraudulent person acquires an indefeasible title." See, also, Black on Rescission and Cancellation (2d Ed.) § 641; Pomeroy, Equity Jurisprudence (4th Ed.) § 778; Pelham v. Chattahoochee Groc. Co. (1906) 146 Ala. 216, 41 So. 12, 8 L. R. A. (N. S.) 448, 119 Am. St. Rep. 19; Martin v. Green (1918) 117 Me. 138, 102 A. 977; Parr v. Helfrich (1922) 108 Neb. 801, 189 N. W. 281; Nelson v. Jones (1923) 93 Okl. 85, 219 P. 667; Crosby v. Paine (1927) 170 Minn. 43, 211 N. W. 947; Southern Pac. Co. v. Bk. of America (D. C. 1928) 23 F. (2d) 939. That the right of rescission may be lost by intervening interests of innocent third parties, see, also, Nat. Bk. v. Taylor (1894) 5 S. D. 99, 58 N. W. 297; Taylor v. Bank (1895) 6 S. D. 511, 62 N. W. 99. It being the rule that the bona fide purchaser of a legal interest takes free and clear of all equities, we can perceive no justification whatever for first declaring Feldman to be a bona fide purchaser and then requiring him to surrender his purchase upon being restored to his status quo at the time thereof. If he bought for fair value and without notice, as the court found that he did, he is entitled to whatever benefit there may be in his bargain and he took free of any equities or right of rescission in Tripp arising from the fraud of Crabbe and Beddow.

The judgment of the court should have declared Feldman's

absolute and unconditional ownership of the Biermann note and mortgage as against any and all claims of Tripp and should have dismissed Tripp's complaint as to him, with costs to Feldman.

It will be the judgment of this court that the appeal of Tripp be dismissed, with costs; and on the appeal of Feldman that the judgment appealed from be reversed and the cause remanded, with directions to enter conclusions of law and judgment upon the present findings in favor of Feldman pursuant to the views hereinbefore indicated.

All the Judges concur.